STATE EX REL. BELOIT IRON WORKS, Appellant, vs. CITY OF BELOIT and another, Respondents.

*June 9—June 30, 1950.*

For the appellant there was a brief by *Jeffris, Mouat, Oestreich, Wood & Cunningham,* and oral argument by *H. F. Knipp* and *Otto A. Oestreich,* all of Janesville.

*George K. Blakely* of Beloit, for the respondents.

FAIRCHILD, J.   A writ of certiorari was issued out of the circuit court for Rock county to review an assessment on a taxpayer's personal property, which assessment was confirmed by the local board of review.   The circuit court sustained the assessment.   The law covering assessments is found in secs. 70.34 and 70.35, Stats. The statute covering the action of the board of review, sec. 70.47, provides in sub. (2) that there shall be an opportunity to challenge the

assessment as made by the assessor, and from the evidence before it the board shall determine whether the assessor's valuation is correct: If too high or too low, it shall "lower or or raise the same accordingly."

The assessor, under sec. 70.35, Stats., asked of the taxpayer the statement of its taxable personal property on hand May 1st. The taxpayer reported taxable property on hand valued at $616,671.86. The practice of equalizing and reducing estimated cash values obtains. There is allowed for heavy industry in Beloit an actual tax-equalization figure of thirty-seven per cent, to be used in arriving at the amount assessable against the taxpayer. In this instance the taxpayer used thirty per cent instead of thirty-seven per cent. This explains the difference between the figures $616,671.86 and $431,-670.30, the latter figure appearing as the assessment valuation. The assessor was not satisfied with the taxpayer's statement. In his own words, his opinion as to the correctness of the taxpayer's report was arrived at in this way: "The report as submitted by the Beloit Iron Works showed a $431,670.30 inventory as of May 1st. This figure looked so ridiculously low that, in my opinion, it was not possible for them to operate and do the volume of business that they do on an inventory of that amount. . . . [That figure] did not appear, in my opinion, to be possible for the Beloit Iron Works to operate and do the volume of business they do on any such inventory, regardless of the amount of product or part of the product that may be purchased from manufacturers entirely outside of the state which I am willing to concede is done, of course. Consequently, we arrived at a figure of $1,402,725 which appeared to me as more of a reasonable-sized inventory for a firm in heavy industry."

There is no dispute as to the applicable statutes or of the rules provided. It is unnecessary to enter into a discussion of "actual cash value" of the property to be assessed. As outlined in the briefs of the parties, it is understood that the Beloit Iron Works, engaged in the manufacture and sale

of large machines, carries on its operation in the following manner: The machines are large, and the appellant is usually engaged from eighteen to twenty-four months in producing all the parts for a complete machine. Only parts of a total machine are produced in the factory at Beloit. The parts are shipped to be assembled on the customer's premises. The appellant has a limited space for storage. The evidence is that the plant is not large enough to hold all the parts which go into the final product. When a part or a section is completed, it is shipped to the customer and stored by him or put in process of erection. The manufacturer's stock is thus shipped out as the sections or parts are ready to go to customers (and these constitute a portion of a total inventory). However, this total inventory made up at the end of the fiscal year includes items which have never been in the factory at Beloit. It appears that the customer is billed for the completed machine. Until completion and billing, the parts or sections shipped by the appellant remain in its inventory. In supplying its customers with parts for a completed machine, it also purchases substantial parts from outsiders which are shipped directly to the customers. These items therefore are included in the total inventory. The method leaves in the inventory items never on hand or not on hand May 1st.

The trial court was of the opinion that subtractions were made from the inventory thus compiled September 30th, but that the new material coming into the factory had not been added. This is an error, for the testimony clearly is to the contrary. The last physical inventory of appellant prior to May 1, 1949, was taken September 30, 1948, at the close of its fiscal year. The testimony before the board of review and the circuit court warrants the statement which we quote from the argument of the appellant:

"That inventory was taken and used by appellant in the preparation of its state and federal income tax returns, all reports to government agencies, state or federal, and the prep-

aration of its annual financial statement. That such inventory was taken at cost or market, whichever is less, is unquestionable, because demanded by sound accounting practice and well-known business reasons. It showed a total manufacturer's stock both in and out of Beloit of $5,566,-362.61. It is well-known common business practice, generally recognized and observed by assessors in making assessments, for all concerns in this state whose fiscal year does not close on April 30th, to start with the last previous physical inventory and extend it to May 1st by adding additions thereto and subtracting reductions therefrom in the interim. That is the only way in which the inventory for purposes of assessment on May 1st can be determined unless another physical inventory is taken on that date. Recognizing that common practice, both the assessor of Beloit and appellant started with the inventory of September 30, 1948. From that starting point, the inventory of manufacturer's stock in Beloit on May 1, 1949, and its market value must be determined."

The increase and depletion of the inventory is disclosed in the table[1] submitted to the board of review and placed before the circuit court, and that table shows that, starting with the total inventory of September 30, 1948, the added purchases, with deducted shipments, produced the total of taxable personalty in the factory on May 1, 1949. The table set out in the footnote is a computation including raw materials and supplies before work thereon at the factory as well as materials and supplies, labor and burden expended on them in the process of manufacture into the finished machine.

It will appear from this general inventory there must be deducted not only shipments to customers between that date and May 1st, but also shipments to customers prior to September 30th which had been included in that inventory but not removed therefrom by billing to the customer before May 1st. It will be seen from a study of the table that deduc-

---

[1] For footnote see post, p. 427.

## [1] COMPUTATION OF INVENTORY

### May 1, 1949

| | Inventory September 30, 1948 | Add: Purchases & Production Oct. 1, 1948 thru April 30, 1949 | Total | Deduct: Completed Shipments Oct. 1, 1948 thru April 30, 1949 | Inventory May 1, 1949 |
|---|---|---|---|---|---|
| Materials and Supplies | $ 3,691,210.03 | $ 3,963,916.79 | $ 7,655,126.82 | $ 4,550,989.12 | $ 3,104,137.70 |
| Castings | $ 1,323,979.46 | $ 1,254,940.36 | $ 2,578,919.82 | $ 1,108,385.95 | $ 1,470,533.87 |
| Labor | $ 200,426.59 | $ 737,012.51 | $ 937,439.10 | $ 692,717.62 | $ 244,721.48 |
| Burden | $ 350,746.53 | | | | $ 428,262.59 |
| Total Inventory | $ 5,566,362.61 | $ 5,955,869.66 | $11,171,485.74 | $ 6,352,092.69 | $ 5,247,655.64 |

Less: Inventory not in Beloit:

Direct shipments by subcontractors to customers............$ 708,198.20

Shipments by Beloit Iron Works prior to May 1, 1949, to customers on uncompleted orders...............$ 3,922,785.58   $ 4,630,983.78

Balance of inventory in Beloit on May 1, 1949.............$ 616,671.86

tions from the total inventory on May 1, 1949, of shipments prior to that date, whether before or after September 30, 1948; also the shipments by subcontractors, were proper. These subcontractors' shipments amount to $708,198.20; thus the shipments by appellant of $3,922,785.58 plus the subcontractors' shipments of $708,198.20 make a total of $4,630,983.78. The appellant insists that it thus becomes clear "that the manufacturer's stock in Beloit on any given date must be the total inventory on that date less all prior shipments by subcontractors directly to customers on the machines still in process and also less all prior shipments to customers on such uncompleted orders."

This general analysis of the appellant's total inventory shows the shipment to customers of completed parts or sections on an uncompleted machine, and how the cost of those parts or sections was determined.

In making the assessment and determining the stock on hand May 1st, there must be taken into consideration the method used by the taxpayer, for this shows the quantity of taxable property on hand at that time. The confusion is not serious. It arises, if any does exist, because of the circumstances under which the appellant's manufacturing business is operated.

The opinion even of a very highly qualified assessor in the earnest discharge of his duty cannot be the substitute for actual figures, nor can it place things in an inventory which do not belong there. The taxpayer's description, if true, and all the evidence upon that point submitted to the board of review sustains its claim, shows the method by which the taxpayer is operating, the time of holding the property, and the amount in his factory at Beloit on May 1, 1949. *State ex rel. First & L. Nat. Bank v. Board of Review* (1941), 237 Wis. 306, 296 N. W. 614; *State ex rel. Hennessey v. Milwaukee* (1942), 241 Wis. 548, 6 N. W. (2d) 718; *State ex rel. I. B. M. Corp. v. Board of Review* (1939), 231 Wis. 303, 285 N. W. 784.

The confusion was sought to be cleared up by Mr. Emilson, a member of the board of review, by the following question:

"I think one of the things that's hard for people to understand including myself is that you have produced $7,655,126.82 worth of goods but have an inventory of $616,671.86. That means it would indicate anyway that you have a turnover, as I see it, of about once a month or a little better. I mean with that amount of inventory you can produce that much goods. I think that's one thing that is hard to understand."

The witness answered:

". . . that is the one thing we would like to impress upon the board of review and that is this problem of partial shipments. That when a part is complete, the section of a machine is complete and is really shipped out to the customer but that does not mean that we bill that customer. We only bill him when the job is complete and the machine is running. The figure of $7,655,000 represents inventory at the beginning of our fiscal year, namely, September 30, 1948, to which we have added purchases from outsiders for materials and supplies of $3,963,000, arriving at the total, as you stated, of $7,655,000. Of that total that we accounted for we actually have shipped customers representing costs on those machines that we billed these customers a total of $4,550,000 leaving a balance of materials and supplies as of May 1st of $3,104,137.70. That figure represents a total of purchases and supplies and parts that is all over the United States."

When the quantity of personal property on hand May 1st is established, together with its value, the problem is solved and is not subject to change by theory or arbitrary method. It appearing from all the evidence introduced that the inventory was as claimed by the appellant, the method resorted to by the assessor resulted in an excessive assessment, and the board of review exceeded its jurisdiction by affirming.

*By the Court.*—The judgment of the circuit court is reversed and cause remanded with directions to enter judgment vacating the assessment, with cost to the plaintiff, and for further proceedings.