CENTRAL CHEESE COMPANY, Respondent, v. CITY OF MARSHFIELD, Appellant.*

MID-STATE CHEESE COMPANY, Respondent, v. SAME, Appellant.*

MILLER and another, Copartners, Respondents, v. SAME, Appellant.*

*April 5—May 2, 1961.*

* Motion for rehearing denied, with $25 costs, on June 27, 1961.

For the appellant there were briefs and oral argument by *John H. Stauber,* city attorney.

For the respondents there was a brief by *Peickert, Anderson & Fisher* of Stevens Point, and oral argument by *Clifford W. Peickert.*

FAIRCHILD, J.  1. *Failure to file complete returns.* The city contends that the taxpayers were not entitled to abatement of the assessments because they failed to file complete returns. Sec. 70.35 (4), Stats., provides:

"Any person, firm, or corporation . . . who fails, neglects, or refuses to make and file the return of personal

property required by this section shall be denied any right of abatement by the board of review on account of the assessment of such personal property unless such person, firm, or corporation shall make such return to such board of review together with a statement of the reasons for the failure to make and file the return in the manner and form required by this section."

The taxpayers did file returns stating the market value of stock on hand May 1st. They omitted information called for by the form of the return covering the computation of a May 1st inventory figure from the last preceding inventory, and other data including purchases and sales in the interim. The assessor requested the information again by letter after noting that it was not included on the return. It was not furnished.

The provisions of sec. 70.35, Stats., as to the form and content of the return are as follows: In sub. (1), it is referred to as "a return of such personal property and of the taxable value thereof." Sub. (2) provides:

"Such return shall be made on a form prescribed by the assessor, with the approval of the state commissioner of taxation, which form shall provide for a statement in summary schedules of the value of merchants' stock, manufacturers' stock, machinery tools and patterns, furniture, fixtures and equipment, and such other classes of personal property as are not by law exempt. No person, firm, or corporation shall be required to take a detailed physical inventory for the purpose of making the return required by this section."

Sec. 70.35 (3), Stats., provides in part:

"Each return shall state the class of property and the value thereof as of May 1st as provided in sec. 70.10 . . ."

The statute nowhere provides or suggests that a taxpayer must furnish the type of information omitted by these taxpayers.

Sec. 70.35, Stats., originated in ch. 419, Laws of 1945. At that time the statutes already contained sec. 71.08 entitled "Information required for local assessors." This section had been created by ch. 325, Laws of 1943. With some revision, it now appears as sec. 71.10 (7). This subsection requires each person required to file a return of income in which inventories are a factor, to file for each taxing district on a form to be provided by the department of taxation, his inventory at the beginning and at the end of the fiscal year, the total of merchandise purchased during the year, and the total sales during the year. Such information is to be forwarded by the department to the assessor in the local taxation district. The purpose of these reports, known as Form 10, is to assist the assessor in the process of assessment.

It would clearly make these Form 10 reports more helpful to the assessor if the taxpayer furnished him with the information and computed May 1st inventory called for by the personal-property return form. The form also called for a reconciliation of any difference between the computed May 1st inventory and the market value on that date as claimed by the taxpayer. There is, however, no statutory requirement that this information and computation be included in the return. While the statute leaves the form of the return to the discretion of the assessor and the commissioner of taxation, we do not consider that they were given authority to expand the statutory requirement of what the return must contain. Thus a person who files a return giving the information required by the statute cannot be considered to have failed to file the return because he omitted the additional information requested.

It follows that the taxpayers in this case were not to be denied abatement solely by reason of their failure to complete the form.

2. Sec. 70.34, Stats., provides in part:

"All articles of personal property shall, as far as practicable, be valued by the assessor upon actual view at their true cash value; . . ."

The difficulties under which the assessor of the city of Marshfield labored in connection with these assessments are readily apparent from the record. He and the deputy assessor called at Mr. Miller's office on May 1st. Mr. Miller questioned their right to view the cheese. After unsuccessfully attempting to reach his attorney by telephone, Mr. Miller said the assessor could go through the buildings, but the deputy assessor could not. Mr. Miller accompanied the assessor through one building, and directed an employee to accompany the assessor through the others. He instructed the employee to answer no questions. He said he would be in his office all day if there were questions, but the assessor did not come back. There were substantial quantities of cheese on hand of various types and sizes, and much of it was owned by others and exempt from taxation for various reasons.

The assessor had knowledge of the inventory figures reported by the taxpayers as of the close of their respective fiscal years on Form 10. One method of determining May 1st inventory would be to make the computation of the sort called for by the form of the return. [1]

The information necessary to make such computation was not given on the return, nor in response to written request. The assessor then made his assessment based on the inventory figures from the close of the previous fiscal year of each taxpayer. The assessor's computations of the May 1st inventory from year-end figures were based on assumptions having little or no validity. Nevertheless, the resulting figures were very substantially less than the year-end fig-

[1] This was the method used by the taxpayer in *State ex rel. Beloit Iron Works v. Beloit* (1950), 257 Wis. 422, 43 N. W. (2d) 473, and considered in that case to have reached a sound result.

ures, and according to the assessor were in line with the quantity of cheese which he observed. He testified, "From actual view, there was more cheese than we had assessed."

Under all the circumstances, including the lack of co-operation on the part of the taxpayers, the obvious difficulty of taking even a rough-estimate inventory of the large amount of cheese present and of determining how much of it was assessable to the taxpayers, we conclude that the assessor valued the property "as far as practicable . . . upon actual view."

"An assessment made by an assessor is presumed to be correct and is binding upon the board of review in the absence of evidence showing that it is incorrect. . . .

. "If there be adduced before the board competent evidence which is unimpeached and which shows that the assessor's valuation is incorrect, such evidence cannot be disregarded by the board. Disregard of such evidence is considered jurisdictional error." [2]

Thus we reach the question whether competent and unimpeached evidence before the board showed that the assessment was incorrect.

Mr. Miller's testimony in support of the valuations reported by the taxpayers may not alone have been sufficient to overcome the presumption. His testimony on that score may be summarized as follows:

The cheese Mid-State owned in Marshfield on May 1st "was figured out" and it amounted to $6,300. Mr. Miller had no records showing every day or every week the amount of cheese on hand. He could not tell at any given time how much there was but "we check that occasionally." The partnership "had $42,000 stock on hand and that was the actual inventory." The taxpayers do not take a physical inventory except at the end of the year. Thirty-two thousand five hundred dollars was an approximately accurate statement of

---

[2] *State ex rel. I.B.M. Corp. v. Board of Review* (1939), 231 Wis. 303, 306, 285 N. W. 784.

cheese stock in Marshfield owned by Central Cheese Company on May 1st. The figures reported by the taxpayers were "approximately correct."

The record does not disclose whether Mr. Miller's testimony was based upon observations he made on May 1st of the amount of cheese on hand, upon estimates from his general knowledge of the business, upon computations, upon records, or upon reports to him by others. Mr. Miller's unwillingness to produce records verifying the claimed May 1st inventories upon the basis of the previously reported inventories and his failure to explain how he arrived at them suggest that the records might not substantiate his statements.

Mr. Miller also testified, however, that he had figured the total cooling capacity in the three buildings, and that the maximum was about 3,300,000 pounds. If this statement is accurate, it must follow from other undisputed facts that there could not have been as much cheese on hand May 1, 1959, assessable to the taxpayers as the assessment would reflect.

The parties seem to have accepted that 33⅓ cents per pound was a fair average value for the cheese on hand. The total value of the assessor's assumed value on hand was $991,580. At the value of 33⅓ cents per pound, this would represent 2,974,740 pounds of cheese. Cheese on hand, but not assessable to taxpayers, consisted of the following: 157,000 pounds owned by the government; 461,000 pounds owned by manufacturers and in taxpayers' possession for grading, paraffining, and testing; 436,404 pounds in custody of Mid-State and exempt under sec. 70.111 (10) (b), Stats.; 732,588 pounds in custody of Steve J. Miller Company and exempt; and 45,096 pounds in custody of Central Cheese Company and exempt. These figures, including the amount of cheese on which the assessment was based, total 4,806,828,

or 1,506,828 pounds more than the total capacity stated by Mr. Miller.

It is true that the assessor testified that he computed the capacity at 9,614,000 pounds. His computations were based on the cubic content of the buildings, derived from outside measurement, and a number of assumptions as to required aisle space, average weight of a cubic foot of cheese, and the like. He had never had occasion to compute the storage capacity of cheese in other warehouses. On the record as it now stands, his testimony did not have probative force and did not refute that of Mr. Miller.

We therefore conclude that the taxpayers succeeded in overcoming the presumption that the assessments were correct, and that the circuit court properly set aside the determination of the board of review.

3. *Amendment of the assessment roll.* The board of review had adjourned *sine die,* and could give no further consideration to the assessment.[3]

The circuit court indicated that if it had the alternative of submitting the matter for reassessment, it would most certainly do so. The circuit court was of the opinion, however, that this course was not open, and ordered amendment of the assessment roll to conform to the taxpayers' figures.

The question is not free from difficulty where personal property is involved. There is express statutory authority for reassessment of real estate after an assessment has been set aside.[4] There is no parallel provision with respect to personal property.

Sec. 70.44, Stats., provides for assessment of personal, as well as real property, omitted from assessment in any of five next-previous years unless previously reassessed. The ques-

---

[3] *State ex rel. Milwaukee Street R. Co. v. Anderson* (1895), 90 Wis. 550, 568, 63 N. W. 746.

[4] Sec. 70.74 (1), Stats.

tion arises whether this section authorizes assessment of personal property omitted from assessment in the sense that although an assessment was once made, it was set aside.

The forerunner of sec. 70.44, Stats., sec. 1059, Stats. 1898, as amended by ch. 50, Laws of 1899, provided for entry of real or personal property omitted from assessment "by mistake or inadvertence."

In *Ashland County v. Knight* [5] the court pointed to the quoted words and concluded that the section "confers no authority to reassess, in a subsequent year, property which was assessed and entered upon the tax roll for the year in which it should have been taxed, and where the said prior assessment or tax has been set aside or determined to be illegal or void."

In 1909, the legislature amended the section by deleting the quoted words.[6] Following the *Ashland* decision as soon as it did, and being directed at the words relied on in that case, this change must have been intended to authorize a new assessment of personal property in a situation of the type now before us.

In *State ex rel. Kenosha Office Bldg. Co. v. Herrmann* [7] which involved real estate, this court said:

"It is first to be pointed out that it is no function of the trial court on certiorari to make an assessment of property, or to order an assessment to be entered on the assessment or tax roll at any fixed sum. The sole function of the trial court is to set aside the assessment if it finds upon the undisputed evidence before the board that it has not been fixed upon the statutory basis."

In *State ex rel. Beloit Iron Works v. Beloit, supra,* footnote 1, an assessment of personal property had been confirmed by the board of review and by the circuit court. This

[5] (1906), 129 Wis. 63, 65, 108 N. W. 208.
[6] Ch. 490, Laws of 1909.
[7] (1944), 245 Wis. 253, 257, 14 N. W. (2d) 157, 14 N. W. (2d) 910.

court stated that it appeared from all the evidence that the inventory was as claimed by the taxpayer. This court did not, however, direct the circuit court to amend the assessment, but directed the entry of judgment vacating the assessment. There was no discussion of the question of appropriate procedure after judicial determination that the assessment could not be sustained.

This question was not discussed in *State ex rel. Evansville Mercantile Asso. v. Evansville*.[8] We said, "Therefore the assessment must be set aside and recalculated upon the basis of the price which appellants paid for the property." Whether the circuit court or the assessor was to make the recalculation was not specified.

Taxpayers cite *Milwaukee Iron Co. v. Schubel*.[9] Although reference was made to New York decisions in which the court amended assessments, the precise question decided was whether on certiorari to a board of review, the court could review the evidence to determine whether the board exceeded its jurisdiction by reaching a decision against all the testimony. This court held that such review was within the scope of certiorari, but did not decide the question now presented.

Taxpayers also cite *Pennsylvania Coal Co. v. Porth*.[10] There the assessor had deliberately assessed the taxpayer for more coal than it had on hand May 1st, contending that it was more equitable to tax on the average amount in stock during the year. The circuit court ordered the assessment roll amended to show the value of the stock on hand May 1st. The facts were stipulated. This court affirmed. There may be cases where the facts are undisputed and once a question of law is determined, the amount of the lawful assessment necessarily follows without dispute. If a court may on

---

[8] (1957), 1 Wis. (2d) 40, 45, 82 N. W. (2d) 899.
[9] (1872), 29 Wis. 444.
[10] (1885), 63 Wis. 77, 23 N. W. 105.

certiorari, order the correct assessment in cases of that sort, that is not the situation we have here. We conclude that the rule stated in the *Kenosha Office Bldg. Co. Case, supra,* footnote 7, is applicable and that the circuit court should have done no more than set aside the assessment.

Sec. 70.44, Stats., requires the assessment of omitted property to be made according to the best judgment of the assessor, and the personal property here involved can no longer be assessed upon actual view. The amount of cheese on hand May 1, 1959, will in all probability have to be derived from the taxpayers' inventory records and records of purchases and sales.

Mr. Miller indicated at the hearings that he did not think the assessor or the board of review was entitled to information from taxpayers' records in order to make the assessment. We are aware that there are complicated problems in determining value of an inventory for business and income-tax purposes.[11] There may be various reasons why the value of an inventory on a certain day as determined by computation from accounting records differs from the market value of the goods on hand. Nevertheless, the impracticability of the assessor's taking physical inventories of stocks of goods, or even (in many situations) making reasonable estimates from actual view must be recognized. Computation from accounting data is often a proper approach,[12] although all parties concerned have an obligation to consider that there may be facts requiring reasonable adjustments in a value computed by formula in order to arrive at an assessment based on market value.

---

[11] See Comments, Inventory Problems Under the Federal Income Tax (1961), 44 Marquette Law Review, 335.

[12] *State ex rel. Beloit Iron Works v. Beloit, supra,* footnote 1.

Should the assessments of these taxpayers again come before a board of review, that body has unquestioned power to compel the attendance of witnesses and the production of all records containing material facts.[13] Mr. Miller is in error in his claim that purchases, sales, and other data needed for a computation of a May 1st inventory from known inventories on other dates are immaterial.

We have noted Mr. Miller's testimony that the Form 10 filed by Central Cheese Company and purporting to show the year-end inventory in Marshfield was inaccurate because it included cheese not located in Marshfield. He indicated that he was unwilling to state how much was elsewhere and where it was. If Central Cheese Company did overstate its Marshfield inventory in its Form 10, it will be entitled to prove that fact, but, under the circumstances, the board could properly disregard a general unsupported statement to that effect such as made in the previous hearings in this matter.

*By the Court.*—In so far as the judgments order amendment of the assessment roll to reflect particular amounts, they are reversed. In all other respects they are affirmed.

---

[13] Sec. 70.47 (8) (d), Stats.