Chicago & Northwestern Railway Company, Appellant, vs. Tax Commission of Wisconsin, Respondent.

*June 5—June 24, 1929.*

For the appellant there were briefs by *Samuel H. Cady* and *Nelson Trottman,* both of Chicago, and *John F. Baker* of Milwaukee, and oral argument by *Mr. Trottman* and *Mr. Baker.*

For the respondent there was a brief by the *Attorney General* and *Franklin E. Bump,* assistant attorney general, and oral argument by *Mr. Bump.*

ROSENBERRY, C. J. Prior to 1903 the railway companies of this state paid a license fee in lieu of other taxes. By ch. 315 of the Laws of 1903 (incorporated in ch. 51, Stats. 1911) the method of taxing railways was changed from a license fee basis to an *ad valorem* basis. The constitutionality of that act was attacked and it is carefully reviewed and

analyzed in *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557, where the constitutionality of the act as a whole was upheld. The act was amended in some minor particulars, and in 1911, the year in which the income tax act was passed, it was provided:

"Section 1212. That the commissioner of taxation . . . shall make an annual assessment of the property of all railroad companies within this state for the purpose of levying and collecting taxes thereon as hereinafter provided."

By sub. (3) of that section,

"The term 'property of the railroad company,' as used in sections 1212 to 1215—27, inclusive, shall include all franchises, right of way, roadbed, tracks, stations, terminals, rolling stock, equipment and all other real and personal property of such company, used or employed in the operation of the railroad or in conducting its business, and shall include all title and interest in such property as owner, lessee or otherwise. Real estate not adjoining its tracks, stations or terminals; grain elevators used in transferring grain between cars and vessels, coal docks, ore docks and merchandise docks and real estate not necessarily used in operating the railroad are excepted, and shall be subject to taxation like the property of individuals."

In 1911, by ch. 658 of the laws of that year, the state levied a tax upon incomes. The term "income" was defined by sub. (2) of sec. 1087m—2 (now sec. 71.02). By definition the entire income of the plaintiff would be taxable however derived unless exempt. It was the evident purpose of the legislature not to disturb the method of taxing railways established by preceding laws. (See ch. 51, Stats. 1911.) Exemptions were provided by sec. 1087m—5 (now sec. 71.05), which so far as material is as follows:

"Section 1087m—5. 1. There shall be exempt from taxation under this act income as follows, to wit: . . .
"2. . . .
"3. Incomes derived from property and privileges by persons now required by law to pay taxes or license fees directly

into the treasury of the state in lieu of taxes, and such persons shall continue to pay taxes and license fees as heretofore."

For the years 1911 to 1916, inclusive, the plaintiff, although in doubt as to the correct construction of the law, made returns of its income from non-operating sources such as rents, land sales, and the like, and paid the taxes assessed thereon. By 1916 the question had become more acute. A series of conferences had been held between plaintiff's attorneys and the members of the Tax Commission. The Tax Commission was in doubt as to what construction should be placed upon the law. The income tax act of 1911 contained a provision whereby persons paying both a personal property tax and an income tax were entitled to an offset, the effect of which was the persons so situated paid the larger tax. The question of whether or not the receipts issued by the state to the plaintiff for its taxes paid directly into the state treasury could be used as an offset against the income tax assessed against it on its non-operating income was submitted to the attorney general. In an opinion which assumed that the tax on non-operating income was properly levied, the attorney general held that sec. 1087$m$—26 (renumbered sec. 71.21, repealed in 1925), permitting receipts for taxes paid on personal property to be used as an offset against income taxes, did not include under the term "a tax on his personal property" a tax paid under sec. 1222—64 and assessed upon the operating properties of a railway company, and that therefore the plaintiff was not entitled to the offset. Despite this opinion the Tax Commission apparently reached the firm conclusion that income derived from non-operating properties was not assessable under the income tax law, directed the plaintiff not to report the same, and no report was made from 1916 to 1925, inclusive. On December 8, 1925, the Tax Commission reopened the question, and the question of the taxability of income derived from non-operat-

ing sources was then submitted to the attorney general. The opinion of the attorney general holding such income taxable was rendered October 11, 1926, and on October 13, 1926, copy of the attorney general's opinion was transmitted to the plaintiff and returns demanded for the years 1916 to 1925, inclusive. Pursuant to the provisions of sec. 71.06 (3), in force at the time the assessment was made, ten per cent. was added so that the assessment as made was as follows:

| Year. | Normal tax. | Interest. |
|---|---|---|
| 1917 ..................... | $1,292 72 | $1,016 47 |
| 1918 ..................... | 4,029 08 | 2,765 16 |
| 1919 ..................... | 21,529 52 | 12,622 76 |
| 1920 ..................... | 12,795 08 | 6,222 25 |
| Total normal tax........... | $39,646 40 | |
| Total interest............... | 22,626 64 | $22,626 64 |
| For the year 1920 there was assessed in addition a surtax account: | | |
| Teachers' retirement fund... | 2,120 01 | |
| To this was added interest amounting to.............. | 1,030 96 | |
| Making a total of normal tax, surtax, and interest......... | $65,424 01 | |

This action was begun to review this assessment.

The first question which arises is whether or not under the statute income derived from its non-operating properties is subject to assessment under the statute. It certainly falls within the definition of "income" as that term is defined in the statute and so is assessable unless exempt under sec. 1087*m*—5, sub. 3, now sec. 71.05 (1) (e), already set out.

It is to be noted that what is exempted by the statute from taxation is income, not persons. The argument is that the statute should be interpreted as if it read "persons now required by law to pay taxes or license fees directly into the

treasury of the state shall be exempt from taxation under the chapter."

The mere statement of this argument seems to us conclusively to refute it. It seems too plain for argument that what is exempt is income, and as applied to railways the income that is exempt is that derived from property and privileges on account of which persons are now required by law to pay taxes and license fees directly into the treasury of the state in lieu of taxes. And as if to make assurance doubly sure, the section goes on to provide "such persons shall continue to pay taxes and license fees as heretofore." As applied to railroads, that upon which they were required to pay taxes as other persons was upon their non-operating properties. The income, therefore, that was exempt was the income derived from operating properties; the income which remained assessable under the clear and explicit provisions of the section because not exempt was such income as was derived from non-operating properties, or, in the language of the statute, sec. 76.02 (7), income derived from property other than "all franchises, rights of way, roadbeds, tracks, stations, terminals, rolling stock, poles, wires, cables, devices, appliances, instruments, equipment and all other real and personal property of the company referred to, used or employed in the operation of its railroad, street railway or other property, as the case may be, and in the conduct of its business. . . ."

We can reach no other conclusion than that under the law as enacted in 1911 and subsequently amended, construing the law with respect to the taxation of public utilities, which was then ch. 64*hh,* Stats. 1919 (now ch. 76), with the income tax act (ch. 48*a,* now ch. 71), the income so derived should have been assessed under the income tax act.

This action was begun under the provisions of sec. 71.155 (Laws of 1925, ch. 446, sec. 5), and the court is strongly

urged, under the provisions of sub. (4) of that section, which is as follows: "Upon such hearing the court shall disregard any irregularity, informality or omission, and shall enter an order confirming such assessment, unless it shall appear that substantial injustice to the complainant has resulted therefrom. . . . If the court shall find that substantial injustice results from such assessment, it shall direct the tax commission to make such corrections in the assessment as it may find that justice shall require," . . . to direct the Tax Commission to set aside the assessment because the personal property offset is not now available to the plaintiff and to remit the interest, provided it is held that the income was assessable.

The substantial injustice complained of is that the plaintiff was at all times ready and willing to pay any tax which was properly assessable against it; that it was at all times ready and willing to make and file its reports in accordance with the requirements of the Tax Commission; that if it be now required to pay the tax in cash it will be unable to offset against the tax levied the taxes paid by it directly into the state treasury under ch. 76, Stats. 1925, because such offset was available only in the years when it was by law properly assessable; that a substantial injustice results in accordance with the holding in *Oconto Co. v. Wis. Tax Comm.* 193 Wis. 488, 214 N. W. 445; that the plaintiff having been at all times able, ready, and willing to pay any tax assessed against it when the same became due and payable, a substantial injustice results if it be required to pay ten per cent. interest upon the tax now assessed.

The right of offset is claimed under the provisions of sec. 1087m—26 (renumbered sec. 71.21), repealed in 1925. By that section it was provided:

"Any person who shall have paid a tax upon his personal property during any year shall be permitted to present the receipt therefor to, and have the same accepted by, the tax

collector to its full amount in the payment of taxes due upon the income of such person during said year."

As was indicated by the attorney general in his opinion heretofore referred to, the personal property offset was designed to further the fundamental purpose of the income tax law, which at that time was understood and declared to be a substitution of income taxation for personal property taxation. It is manifest that the provisions of sec. 1087*m*—26 apply to income derived from property which was assessable as personal property under the laws relating to taxation of personal property. Any other construction of the statute would permit taxes paid upon property, the income of which was exempt under the statute, to be offset against a tax upon income derived from non-operating property and so permit the income from non-operating property to escape taxation. It would in effect amount to a double exemption. It nowhere appears that the plaintiff has non-operating property subject to taxation as personal property. It is neither within the language nor the purpose of sec. 1087*m*—26 to permit taxes paid by a public utility on its operating properties to be used as an offset against taxes upon income derived from non-operating properties. No substantial injustice results therefrom because the plaintiff cannot use its tax receipts to offset the tax upon the income derived from its non-operating properties because not levied within the year that it was earned.

There remains, then, only the question of interest. The plaintiff having had the use of the money which under the law should have been paid into the state treasury for the years in question, it should pay some interest. The legislature has fixed the rate at ten per cent. For the court to now hold under the provisions of sec. 71.155 that interest should not be added because it amounts to a substantial injustice would be equivalent to setting the legislative enactment aside. In *Oconto Co. v. Wis. Tax Comm.* 193 Wis. 488, 214 N. W.

445, the court went as far as the statute in question warrants it in going. Certainly we·cannot extend the doctrine of that case, and in this case, unless we shall hold that the act of the legislature itself amounts to a substantial injustice, there is no room for the application of the provisions of sec. 71.155.

In what has been said we have given what seems to the court to be the plain, obvious, and unambiguous meaning of the statute. Reading the provisions of the chapter relating to the income tax law together with the law relating to taxation of public utilities, it would seem that the legislature was extremely careful to forestall the construction placed upon the law by the Tax Commission by asserting that those persons who paid taxes directly into the treasury of the state in lieu of (other) taxes "shall continue to pay taxes and license fees as heretofore;" that is, they were to pay taxes under the general tax laws of the state so far as they were levied upon non-operating property. The court feels, however, it should respond to the earnest and lawyerlike argument made here that the practical construction placed upon this law by the Tax Commission for a period of ten years should now be adopted by the court. It would serve no useful purpose for us to review at length authorities relating to the adoption of the construction of an ambiguous law made by administrative officers over a long period of years. The case of *U. S. v. Mo. Pac. R. Co.* 278 U. S. 269, 49 Sup. Ct. 133, 73 Lawy. Ed. 136, in which the authorities are reviewed, is in many respects analogous to this. In that case the court found that there had not been a settled interpretation of the law. In this case the law was first construed one way and after five years a different construction was adopted by the Tax Commission. In a case (*Wis. Pub. Serv. Corp. v. Wis. Tax Comm.* 198 Wis. 259, 224 N. W. 130) reaching this court in 1929, the right of the Tax Commission to assess an income tax on income earned by a utility on its non-operating properties was not even questioned. In *U. S. v.*

*Mo. Pac. R. Co., supra,* the act under consideration was by its terms applicable to a great many persons and situations, while here the statute applies to a small number of persons— those who pay taxes directly into the state treasury in lieu of other taxes. While the law is a general law and affects alike all persons falling within a class, the class itself is numerically small. The question of how the statute should be construed appears to have come up for consideration but twice. The plaintiff voluntarily returned income derived from its non-operating property and paid taxes upon it for five years. Upon a reconsideration of the matter a different construction was adopted and has been acquiesced in over a period of nine years. The taxing officers were at all times confronted with the opinion of the attorney general rendered in 1913, which should have made them more vigilant. The reason for their attitude is not difficult of discovery. They felt that because of the personal property offset the state treasury would not be benefited in any event. In this they were clearly in error and that is the extent of their error.

The language of sec. 1087*m*—26, which provided that any person (which includes a railroad company as defined in the act) who has paid a tax assessed upon his personal property may offset it against his income tax, considered with the language of sec. 76.06, which provided that property of a utility assessable under the provisions of ch. 76 be declared to be personal property, taking nothing else into consideration, leads naturally to the conclusion that a receipt for taxes paid pursuant to the provisions of ch. 76 can be used as an offset against income taxes. But when all the provisions of both chapters are taken into account and when it is considered that the personal property referred to in sec. 1087*m*—26 is the personal property employed in earning the income, the legislative purpose becomes clearly apparent. There were but two interpretations of the statute possible, and after 1916 the question does not appear to have been raised or considered

until after the repeal of the personal property offset in 1925. The facts in this case clearly bring it within the rule announced in *U. S. v. Mo. Pac. R. Co., supra.*

We are well aware that the eminent men who administered the affairs of the Tax Commission were competent and able and very conscientious and energetic in the discharge of their duties. When, however, we consider the mass of administrative detail and the heavy responsibilities laid upon them, the wonder is not that they made an error but that their errors were so few.

*By the Court.*—Judgment affirmed.