LAABS, Appellant, vs. TAX COMMISSION and others, Respondents.

*May 1—June 4, 1935.*

*P. F. Leuch,* attorney, and *Brooke Tibbs* of counsel, both of Milwaukee, for the appellant.

For the respondents there was a brief by the *Attorney General, Herbert H. Naujoks,* assistant attorney general, *William A. Zabel,* district attorney of Milwaukee county, and *C. Stanley Perry,* assistant corporation counsel, and oral argument by *Mr. Perry* and *Mr. Naujoks.*

WICKHEM, J. During the years 1912 through 1925, plaintiff invented and developed certain methods and equipment for the disposal of dead animals. He obtained letters patent therefor in 1925, and assigned his rights to Allbright-

Nell Company, of Chicago, on a royalty basis. During 1926 and 1927, plaintiff received royalties, reporting them in his income tax returns. In May, 1928, the supreme court of the United States, in *Long v. Rockwood,* 277 U. S. 142, 48 Sup. Ct. 463, held that income from patent royalties was not subject to taxation by the states. In January, 1929, the Wisconsin Tax Commission voluntarily repaid to plaintiff moneys theretofore paid by him in 1926 and 1927, as a tax upon the income from such royalties, and changed its form for tax returns to omit reference to income from such sources. Thereafter, plaintiff made returns of his 1928, 1929, and 1930 income upon the revised forms, omitting all reference to the royalties. In January, 1931, plaintiff sold his entire interest in the patent to the Allbright-Nell Company for $20,000. In March, 1932, plaintiff filed his return for 1931, and reported the amount of this sale, taking deductions, however, in the sum of $25,572.52 as the experimental cost of the development of the patent. On May 16, 1932, the United States supreme court, in the case of *Fox Film Corp. v. Doyal,* 286 U. S. 123, 52 Sup. Ct. 546, overruled the decision of *Long v. Rockwood, supra,* and held royalties on patents and copyrights to be taxable. Thereupon, plaintiff was assessed additional income taxes for the years 1928, 1929, and 1930, based upon a consideration of the patent royalties as a part of his income.

The first and principal question upon this appeal has to do with the effect of the overruling of the decision in *Long v. Rockwood, supra,* by the subsequent *Fox Film Corp. Case.* This raises the question whether a decision overruling and repudiating an earlier decision operates prospectively or retrospectively. The Blackstonian doctrine, which is generally held, is that the later decision is retrospective in operation for the reason that courts declare but do not make law. In consequence, when a decision is overruled, it does not merely become bad law,—it never was the law, and the later pro-

nouncement is regarded as the law from the beginning. See note 85 A. L. R. 262; *People v. Graves,* 242 App. Div. 128, 273 N. Y. Supp. 582; 37 Harvard Law Review, 408; 18 Columbia Law Review, 230; 4 Fordham Law Review, 128. It is the prevailing view that the promulgation of rules prospective in operation is a purely legislative function, and that the judicial promulgation of such rules constitutes usurpation of legislative powers. The doctrine has been severely criticized, first, because it leads to a strict and unyielding adherence to the rule of *stare decisis,* and interferes with the progress of the law, and, second, because it occasionally produces extreme hardships upon those whose rights accrued in reliance upon the law as set forth in the overruled decision. See 18 Columbia Law Review, 230. While there would seem to be no middle ground in logic, between a complete adherence to or a complete repudiation of the Blackstonian doctrine, the courts nevertheless have established certain exceptions to it for the purpose of mitigating hardships created by its literal application. Without attempting to deal exhaustively with the subject, it may be said that, generally speaking, courts adhering to the rule that a later decision operates retrospectively, have created the following exceptions: (1) Where contracts have been entered into in reliance upon a legislative enactment as construed by the earlier decisions. (2) Where a legislative enactment has been declared valid by earlier decisions, and contracts have been entered into in reliance upon the statute and decisions. *Harmon v. Auditor of Public Accounts,* 123 Ill. 122, 13 N. E. 161; *Walker v. State (Bond Debt Cases),* 12 S. C. 200; *State v. Mayor of Bristol,* 109 Tenn. 315, 70 S. W. 1031; *Willoughby v. Holderness,* 62 N. H. 227; *Rutland R. Co. v. Central Vermont R. Co.* 63 Vt. 1, 21 Atl. 262; *Thomas v. State ex rel. Gilbert,* 76 Ohio St. 341, 81 N. E. 437; *Menges v. Dentler,* 33 Pa. 495; *Geddes v. Brown,* 5 Phila. (Pa.) 180; *Nickoll v. Racine Cloak & Suit Co.* 194

Wis. 298, 216 N. W. 502; *Chase v. American Cartage Co.*
176 Wis. 235, 186 N. W. 598; *Farrior v. New England
Mortgage Security Co.* 92 Ala. 176, 9 So. 532; *Hood v.
Pennsylvania Society,* 221 Pa. 474, 70 Atl. 845; *Haskett v.
Maxey,* 134 Ind. 182, 33 N. E. 358; *Ruf v. Mueller,* 49 Ind.
App. 7, 96 N. E. 612; *Stephenson v. Boody,* 139 Ind. 60, 38
N. E. 331; *Levy v. Hitsche,* 40 La. Ann. 500, 4 So. 472;
*Mountain Grove Bank v. Douglas County,* 146 Mo. 42, 47
S. W. 944. (3) Where a criminal statute, which has re-
ceived a limited construction by earlier decisions, has been
so expanded in meaning by the later overruling decision as
to make acts criminal which were not such under the earlier
decisions, and the later decision is sought to be applied to
one whose acts were committed before the statute was given
the enlarged construction. See note 49 A. L. R. 1273.
While the exceptions above noted appear inconsistent, logi-
cally, with the Blackstonian doctrine, they are generally
considered to constitute a wiser choice than the complete
abandonment or complete enforcement of the doctrine.

In this case the precise question is not what attitude this
court shall take with respect to the effect of its own later
decisions upon earlier decisions thereby repudiated. The
question is whether the decision of the United States su-
preme court in the *Fox Film Corp. Case* was retrospective
in operation and effect. The determination of this question
is for the supreme court. So far as we can discover, the
court has never expressly passed upon this question, and we
can only resort to the general rule and to such analogies as
are to be drawn from cases which, while not in point, may
disclose the attitude of the court upon the question. All of
the cases cited, and hereafter to be discussed, deal with the
effect to be given to the decisions of a state supreme court
repudiating its earlier decisions.

It has been held in cases involving state law, but originat-
ing in a federal court, that the supreme court is not bound

to follow an overruling decision of the state court when to do so would impair a contract made in the interim in reliance upon the overruled case or cases. *Gelpcke v. City of Dubuque,* 1 Wall. 175, 206, 17 L. Ed. 520; *Douglass v. Pike County,* 101 U. S. 677, 25 L. Ed. 968; *Loeb v. Columbia Twp.* 179 U. S. 472, 21 Sup. Ct. 174. In the *Gelpcke Case,* the following rule, as stated in *Ohio Life Ins. & Trust Co. v. Debolt,* 16 How. 416, 432, is quoted and approved:

"The sound and true rule is, that if the contract when made was valid by the laws of the state, as then expounded by all the departments of its government, and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent act of the legislature of the state, or decision of its courts, altering the construction of the law."

The court adds: "The same principle applies where there is a change of judicial decision as to the constitutional power of the legislature to enact the law. To this rule, thus enlarged, we adhere. It is the law of this court. It rests upon the plainest principles of justice. To hold otherwise would be as unjust as to hold that rights acquired under a statute may be lost by its repeal. The rule embraces this case."

The *Gelpcke Case* seems to have given rise to considerable misunderstanding as to its scope. In a dissenting opinion in *Muhlker v. New York & Harlem R. Co.* 197 U. S. 544, 25 Sup. Ct. 522, 529, Mr. Justice HOLMES refers to its rule as "a doctrine which it took this court a great while to explain." While this case was for a time thought to rest upon the contract clause, it was explained in subsequent decisions as limited to cases originating in federal courts and as giving to such courts the right, for the purpose of avoiding injustice, but without invoking the contract clause, to decide and enforce the state law as laid down by decisions of the state court governing when the contract was made, rather than by its later decisions. *Mississippi & M. R. Co. v. Rock,* 4 Wall. 177; *Bacon v. Texas,* 163 U. S. 207, 16 Sup. Ct. 1023; *Fleming v. Fleming,* 264 U. S. 29, 44 Sup. Ct. 246;

*Tidal Oil Co. v. Flanagan,* 263 U. S. 444, 44 Sup. Ct. 197; *Central Land Co. v. Laidley,* 159 U. S. 103, 16 Sup. Ct. 80. The *Muhlker Case* has been regarded by writers as tending to break down the distinction between cases originating in federal court and those in which review of a decision of the highest court of the state is sought. See 18 Columbia Law Review, 236; 22 Harvard Law Review, 182. This case, however, is distinguished in *Tidal Oil Co. v. Flanagan, supra,* upon the ground that there a statute had been passed subsequently to the contract involved, and was held to impair it. "In such a case this court accepts the meaning put upon the impairing statute by the state court as authoritative, but it is the statute as enforced by the state through its courts which impairs the contract, not the judgment of the court." See also, to the same effect, *Brinkerhoff-Faris Trust & Sav. Co. v. Hill,* 281 U. S. 673, 50 Sup. Ct. 451. Subject, apparently, to the very limited scope of the doctrine in the *Gelpcke, Douglass,* and *Loeb Cases,* it is for the highest court of the state to determine whether an overruling decision shall be retroactive. *Nat. Mut. B. & L. Asso. v. Brahan,* 193 U. S. 635, 24 Sup. Ct. 532; *Tidal Oil Co. v. Flanagan, supra; Great Northern R. Co. v. Sunburst Oil & Ref. Co.* 287 U. S. 358, 53 Sup. Ct. 145, 85 A. L. R. 254. See 28 Ill. Law Review, 277; 17 Minn. Law Review, 812; 11 N. C. Law Review, 323; 10 N. Y. U. Law Review, 528.

In addition to the foregoing cases, three cases have come to our attention in which state courts have determined whether a decision by the United States supreme court, overruling an earlier decision, was to be given retrospective operation. In *Harris v. Jex,* 55 N. Y. 421, a mortgage was executed before the passage of the Legal Tender Act. After the decision of the United States supreme court in *Hepburn v. Griswold,* 8 Wall. 603, 605, 19 L. Ed. 513, declaring the

act void as to contracts made prior to its passage, the grantee of the mortgagor tendered payment of the mortgage debt in legal tender notes, which the mortgagee refused. Later, in *Knox v. Lee* (*Legal Tender Cases*), 12 Wall. 457, 20 L. Ed. 287, the United States supreme court reversed its decision. It was held that the tender did not discharge the lien of the mortgage; it being insufficient according to the law as then declared. The New York court declined to give retroactive effect to the later determination. The court said:

"It is insisted on the part of the defendant that notwithstanding the fact that at the time the tender was made the supreme court of the United States, the ultimate judicial authority on all questions arising under the constitution and laws of the United States, had decided that the Legal Tender Act, so far as it applied to debts like that of the plaintiff, was void, and that he was entitled to demand payment of his debt in coin, yet he was bound to know the law to be as it was subsequently declared, and that a refusal to accept the tender involved the loss of his security. I think the law did not impose upon the plaintiff so unreasonable a burden. . . . The plaintiff had a right to repose upon the decision of the highest judicial tribunal in the land. It was, as applied to the relations between these parties and to this case, the law, and not the mere evidence of the law."

The New Jersey court, in *Stockton v. Dundee Mfg. Co.* 22 N. J. Eq. 56, on virtually the same facts, held that the later decision was retrospective in operation. The case of *People v. Graves*, 242 App. Div. 128, 273 N. Y. Supp. 582, involving the effect of the *Fox Film Corp. Case* upon the doctrine announced in *Long v. Rockwood,* likewise held the effect of the later decision to be retrospective and the state entitled to assess an income tax during the years that the *Long Case* was accepted as law.

An examination of these three cases will disclose that in each the court assumed, without discussing the matter, that

the effect of an overruling decision by the United States supreme court is to be determined by applying rules applicable to such decisions generally. Probably it is a fair assumption, in the absence of an express determination by the supreme court, that it will follow the rule that decisions operate retrospectively. It is also a fair assumption that the exceptions generally recognized will likewise be enforced. However limited the scope of the *Gelpcke* and *Muhlker Cases,* it is difficult to avoid the conclusion that the court has, in the past, been impressed with the injustice of disturbing contract and property rights by the retrospective operation of an overruling decision.

In the instant case, there is no such situation as existed in the *Gelpcke* or *Muhlker Cases.* Plaintiff did not contract or acquire other property rights in reliance upon the doctrine of *Long v. Rockwood.* To compel him to pay a tax which, by the doctrine of the *Fox Film Corp. Case,* the state was entitled to collect, does not seem to us to produce injustice or undue hardship. To deprive the state of revenue to which it was justly entitled upon a correct view of the law would produce injustice.

It is suggested that the retrospective operation of the *Fox Film Corp. Case* will result in the enforcement against plaintiff of unconscionable penalties, but the record does not sustain this contention. It is true that plaintiff will be compelled to pay interest at the usual legal rate for taxes withheld in reliance upon the decision in *Long v. Rockwood, supra.* Under the authorities, interest, even at the legal rate, exacted for nonpayment of taxes is usually denominated a penalty. 3 Cooley, Taxation (4th ed.), § 1274. However, we see no occasion to hold that its payment will produce such a hardship as will warrant application of the exception, heretofore referred to, with respect to crimes. The state has not had the use of the money and plaintiff has. See *Chicago &*

*N. W. R. Co. v. Tax Comm.* 199 Wis. 368, 375, 226 N. W. 293. It might be quite a different thing if high rates of interest or penalties, wholly unrelated to the fair value of the use of the money, had been imposed. We discover no such impositions relating to the period during which *Long v. Rockwood* was recognized as law. Hence we conclude that there is no merit in plaintiff's contention, and we add, for whatever weight it may have, that the *Fox Film Corp. Case* not only did not put any limitations upon its retrospective operation, but applied its doctrine retrospectively to the facts there presented.

It is next claimed that the assessment is neither the result of an office audit of plaintiff's returns, nor of new facts disclosed by a field investigation. From this it is contended that the commission is not authorized under sec. 71.11, Stats., to collect the assessment, since the latter section requires the collection to be based upon information and new facts. *State ex rel. Schuster Realty Co. v. Lyons,* 184 Wis. 175, 197 N. W. 585, 199 N. W. 48. Plaintiff's contention is doubtless sound in fact. The assessment resulted when the decision in the *Fox Film Corp. Case* came to the attention of the taxing authorities. However, plaintiff's conclusion does not follow. The original failure to assess was based solely upon an erroneous view of the law, and a corrected assessment may be made within the time limited by the statutes. *Chicago & N. W. R. Co. v. Tax Comm.* 199 Wis. 368, 226 N. W. 293; *Armory Realty Co. v. Olsen,* 210 Wis. 281, 246 N. W. 513.

Plaintiff's next contention is that the court erred in finding that the fair cost of developing the patent was $6,977.52, rather than $25,572.52, as claimed by plaintiff. Plaintiff's claim for deduction from the amount for which his patent was sold outright embraces expenditures during the years 1912 through 1925. Plaintiff lists the sum of $13,300 for

two experimental plants erected and used during the period from 1912 to 1918, and the sum of $12,272.52 as expenditures for dead animals, equipment, material, and miscellaneous expenses during the entire period. The evidence sustains the finding of the trial court that most of plaintiff's expenses for plant and equipment during the earlier years were capital expenditures in conducting a going business, and were not used exclusively for experimental work in perfecting his patent. It also sustains the conclusion that plaintiff, during the period from 1912 to 1921, conducted a rendering business, and had an income from the operation of that business. He appears to have abandoned his first plant in 1916, and his second plant was condemned in 1918. This resulted in a total loss, now sought to be charged as expense of patent development.

In this state of the record the burden was upon plaintiff to isolate from the general expenses of the business such items as were properly chargeable to the development of the patent, and it cannot be said as a matter of law that plaintiff sustained this burden. The evidence is extremely unsatisfactory and inconclusive, and, having the burden of proof, plaintiff cannot now complain that the doubts were resolved against him by the trier of fact.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting*). It is stated in the decision: "It is suggested that the retrospective operation of the *Fox Film Corp. Case* will result in the enforcement against the plaintiff of unconscionable penalties, but the record does not sustain this contention." But it is conceded that the exaction of an additional amount because of the failure to pay taxes when due "is usually denominated a penalty. 3 Cooley, Taxation (4th ed.), § 1274." The taxpayer, in good faith, paid the tax in 1926 and 1927. He was also willing to pay this tax in subsequent years, but was prevented by the an-

nounced position taken by the proper officers. The reason for the officers' mistake in this respect is set forth in the opinion of the court. My dissent is based on the proposition that the six per cent interest added to the tax is a penalty. That this is so must appear from an analysis of the relation between the taxpayer and the government. A tax is not contractual in its nature. It is wholly dependent upon statutory authority, and the several steps for the collection thereof are determined by specific provisions enacted by the legislature. The assessment of the tax, though it may definitely establish a demand due the state, does not constitute a contract either express or implied. The levy of a tax is a positive act of the government binding upon the taxpayer, but to the making and enforcing of the collection, the personal consent of the taxpayer is not required. In tax laws, penalties are imposed for mere delinquencies in order to hasten payment. They are imposed as a punishment for neglect to pay. There would be no interest charge but for the provision that upon failure to pay there shall be added six per cent. Originally, the rate fixed by this particular section under consideration was ten per cent. It was reduced in 1927 to six per cent. The reduction of severity of the penalty does not change its nature. The statute calls for, and the judgment results in, the imposition of penalties for nonpayment of taxes. As this is true, upon the analogy of the criminal cases cited in the opinion, plaintiff is within the exception recognized. At all times the interest addition has been a penalty, not a consideration for the forbearance of money, nor is it a part of the tax. 3 Cooley, Taxation, *supra*.

A serious question would arise were the state to attempt to give or loan its credit, because of the provisions of our state constitution, whereas the imposition of penalties for failure to pay taxes when due, or the permitting of a discount to induce prompt payment, may be properly justified.

As the percentage added is a penalty, and there exists a rule against retrospective penalties, it ought to be consistently complied with. This would prevent, in this instance, the imposition of those penalties upon the taxpayer, and require a modification of the judgment. If the penalties are so involved in the matter of the reassessment that there can be no separation of them from the tax proper, then the judgment should be reversed.