(94–CV–1944) WISCONSIN CENTRAL LIMITED, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, and Cate Zeuske, Defendants-Respondents.†

(94–CV–1945) NICOLET BADGER NORTHERN RAILROAD, INC., Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, and Cate Zeuske, Defendants-Respondents.†

(94–CV–1946) GREEN BAY & WESTERN RAILROAD COMPANY, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, and Cate Zeuske, Defendants-Respondents.†

(94–CV–1947) CHICAGO & NORTH WESTERN RAILWAY COMPANY (f.k.a. Chicago & North Western Transportation Company and Lessor Subsidiaries), Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE and Cate Zeuske, Defendants-Respondents.†

†Petition to review granted.

323

(94–CV–1948) WISCONSIN & CALUMENT RAILROAD, INC.,
Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, and Cate Zeuske,
Defendants-Respondents.†

(94–CV–1949) DULUTH, WINNIPEG & PACIFIC RAILWAY
COMPANY, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, and Cate Zeuske,
Defendants-Respondents.†

(94–CV–1950) WISCONSIN & SOUTHERN RAILROAD COM-
PANY, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, and Cate Zeuske,
Defendants-Respondents.†

(94–CV–1951) TOMAHAWK RAILWAY LIMITED PARTNER-
SHIP, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE and Cate Zeuske,
Defendants-Respondents.†

†Petition to review granted.

(94–CV–1952) DULUTH, MISSABE & IRON RANGE RAILWAY COMPANY, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, and Cate Zeuske, Defendants-Respondents.†

(94–CV–1953) FOX RIVER VALLEY RAILROAD COMPANY, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, and Cate Zeuske, Defendants-Respondents.†

(94–CV–1954) BURLINGTON NORTHERN RAILROAD COMPANY, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, and Cate Zeuske, Defendants-Respondents.†

(94–CV–1955) ESCANABA & LAKE SUPERIOR RAILROAD COMPANY, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF REVENUE, and Cate Zeuske, Defendants-Respondents.†

†Petition to review granted.

(94–CV–1957) Soo Line Railroad Company, Plaintiff-Appellant,

v.

Wisconsin Department of Revenue, and Cate Zeuske, Defendants-Respondents.†

(94–CV–1958) Marinette, Tomahawk & Western Railroad Company, Plaintiff-Appellant,

v.

Wisconsin Department of Revenue, and Cate Zeuske, Defendants-Respondents.†

Court of Appeals

*No. 99–0194. Oral argument September 21, 1999.—Decided December 16, 1999.*

## 2000 WI App 14

(Also reported in 606 N.W.2d 226.)

†Petition to review granted.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *David P. Potter* and *Alan E. Bernick* of *Oppenheimer, Wolff & Donnelly, LLP* of St. Paul, MN, and *Robert A. Schnur* and *Joseph A. Pickart* of *Michael, Best & Friedrich LLP* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Peter C. Anderson*, assistant attorney general.

Before Eich, Vergeront and Deininger, JJ.

¶ 1. VERGERONT, J. This is a consolidated action initiated by a number of railroads[1] challenging

---

[1] The following railroads are parties to this action: Wisconsin Central Ltd.; Nicolet Badger Northern Railroad, Inc.; Green Bay & Western Railroad Co.; Chicago & North Western Railway Co.; Wisconsin & Calumet Railroad, Inc.; Duluth, Winnipeg &

the assessment of their property taxes under ch. 76, STATS., for the years 1989 through 1993. The Wisconsin Department of Revenue (DOR) had reduced their assessment for those years in response to litigation initiated by the railroads challenging the imposition of ad valorem taxes on their personal property as a violation of the Railroad Revitalization and Regulation Reform Act, 49 U.S.C. § 11503 (1988). Based on a subsequent United States Supreme Court decision, DOR decided that the reduction was not legally required. The trial court ruled that § 76.09, STATS., gave DOR the authority to assess the railroads in the year 1994 for those prior years, because DOR had "omitted [property] from assessment [in those years] by mistake or inadvertence. . . ." The railroads appeal from the summary judgment granted in DOR's favor. We conclude the circumstances of this case do not constitute the omission of property from assessment by mistake or inadvertence, and therefore we reverse.

## BACKGROUND

¶ 2.   The facts are not in dispute. In each of the years 1989 through 1993, the railroads, with certain exceptions not relevant to the issue on appeal, timely filed with DOR an annual report as required by § 76.04, STATS., which listed all the property owned or used by the railroad in that year at book value. For each of those years, DOR prepared an assessment for each railroad that purported to establish the fair market

Pacific Railway Co.; Wisconsin & Southern Railroad Co.; Tomahawk Railway Ltd. Partnership: Duluth, Missabe & Iron Range Railway Co.; Fox River Valley Railroad Co.; Burlington Northern Railroad Co.; Escanaba & Lake Superior Railroad Co.; Soo Line Railroad Co.; Marinette, Tomahawk & Western Railroad Co.

value of all that railroad's property in Wisconsin, reduced that value by a formula, which we will refer to as the 4-R reduction, and calculated the amount of taxes due from each railroad. With certain exceptions not relevant to this appeal, each railroad paid the taxes so assessed in a timely manner.

¶ 3. The background to the 4-R reduction begins with the Railroad Revitalization and Regulation Reform Act, 49 U.S.C. § 11503 (1988) (the 4-R Act), which prohibited states from imposing discriminatory taxes upon railroad transportation property. Four of the railroads in this action brought suit in 1988 in the United States District Court, Western District of Wisconsin, asserting that DOR's assessment of taxes against them in 1988 under ch. 76, STATS., violated the 4-R Act. In that suit, the railroads alleged that DOR discriminated against them because approximately 85% of the total value of all commercial and industrial property in Wisconsin was exempted from ad valorem taxes under ch. 70, STATS., while 100% of a railroad's personal property[2] was taken into account in determining the taxes payable by a railroad under ch. 76. The federal district court entered a stipulation and order on April 26, 1989. In this document the parties stipulated that for the 1988 tax year, pursuant to an agreed estimate, approximately 80% of the total value of commercial and industrial property in Wisconsin is exempt from ad valorem taxation, while the railroad's personal property in Wisconsin is not exempt from ad valorem taxation; and, based on the parties' consent, the court found that this constituted a violation of the 4-R Act for that tax year.

---

[2] The operating property of railroad companies, both personal and real property, is deemed personal property, and valued and assessed together as a unit. Section 76.03(1), STATS.

¶ 4.  The 4-R reduction was the remedy the parties to the 1988 suit agreed upon. The aggregate fair market value of each railroad's Wisconsin property, after being determined in the usual manner, was reduced by an amount determined by formula, which was intended to eliminate the effect of including 100% of the railroad's personal property in the initial calculation.[3] DOR applied this reduction in determining the railroads' ch. 76, STATS., assessments for 1988 through 1993. In 1990, the first full year following the resolution of the federal lawsuit, the 4-R reduction methodology was explained in the instructions published by DOR for the railroads' use in completing their annual reports.

¶ 5.  On January 24, 1994, the United States Supreme Court decided *Department of Revenue v. ACF Indus., Inc.*, 510 U.S. 332, 347–48 (1994), holding that the 4-R Act did not limit the State's discretion to exempt non-railroad property but not railroad property from ad valorem property taxes of general application. In May of that year, DOR sent a letter to all railroads informing them that because of this decision, there would be no 4-R reduction for the 1994 assessments; the railroads had been underassessed for the years 1988–93; and DOR would be issuing "back assessments" to correct the underassessment. Subsequently DOR issued assessment notices to each railroad, assessing them for the additional taxes that would

---

[3] The reduction was computed by calculating on a system—wide basis the percentage of a railroad's property which was represented by its personal property at book value; multiplying that percentage by 80%; multiplying that product by the railroad's unit value in Wisconsin as otherwise determined; and subtracting that amount from the railroad's unit value in Wisconsin as otherwise determined.

have been due in each of those years had there been no 4-R reduction. The amounts of retroactive assessment for the four years range from $5,235.13 to $5,569,926.02 per railroad and total $13,974,077.21. The assessment notice also informed the railroads the retroactive assessments would be due by July 1, 1994, and subject to delinquent interest of 18% after that date.

¶ 6. After receiving notice of the retroactive assessments, the railroads filed actions in federal district court, challenging both the retroactive assessments and the 1994 assessment (without the 4-R reduction) as violating various provisions of the 4-R Act. These cases were decided against the railroads in the district court, which relied on the Supreme Court's decision in *ACF Industries*. The Seventh Circuit affirmed. *See Burlington N. R.R. Co. v. DOR*, 59 F.3d 55 (7th Cir. 1995); *Duluth, Missabe & Iron Range Ry. Co. v. DOR*, 100 F.3d 69 (7th Cir. 1996).

¶ 7. In June 1994, the railroads filed these consolidated actions in state court asserting that the retroactive assessments are invalid on a number of state law grounds and under the federal constitution, and challenging the 18% interest on any amounts not paid by July 1, 1994. All claims were either decided against the railroads on summary judgment or voluntarily dismissed by them. On this appeal we address only the claim that the retroactive assessments are invalid because they do not meet the requirements of § 76.09, STATS., which provides:[4]

---

[4] Our conclusion that the retroactive assessments are not authorized by § 76.09, STATS., makes it unnecessary to address the other issues the railroads raise on appeal: whether the retroactive assessments are a deviation from DOR's prior policies and practices that violates § 227.57(8), STATS.; whether equita-

**Assessment of omitted property**. Any property subject to assessment under this subchapter which has been omitted from assessment or which has not been included in any assessment already made in any of the 5 next previous years by mistake or inadvertence unless previously reassessed for the same year or years, shall be entered by the department upon its assessment and tax roll once additionally for each year so omitted, designating each additional entry as omitted for the year of omission and fixing the valuation and tax to each entry for a former year as the same should then have been assessed according to the best judgment of the department. The proceedings related to an assessment under this section shall be had and hearings given as far as practicable in accordance with this subchapter.

¶ 8.  The trial court concluded that property was omitted as a result of the application of the 4-R reduction, and that the omission was by mistake because it was a misconception or misunderstanding of the law. It therefore granted DOR's motion for summary judgment on this issue and denied the railroads' motion.

## DISCUSSION

■

¶ 9.  Summary judgment is proper when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Because the parties agree there are no genuine issues of fact, we turn directly to the question of the proper construction of § 76.09, STATS., a question

ble estoppel bars the retroactive assessments; and what interest is authorized.

of law, which we review de novo. *See State v. Setagord,* 211 Wis. 2d 397, 406, 565 N.W.2d 506, 509 (1997). The purpose of statutory interpretation is to discern the intent of the legislature. *Id.* To do so, we first consider the language of the statute. If the language of the statute clearly and unambiguously sets forth the legislative intent, we apply that to the case at hand and do not look beyond the statutory language to ascertain its meaning. *Id.* A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *Id.* at 406, 565 N.W.2d at 510. If a statute is ambiguous, we look to the subject matter, object, context and history of the statute in order to ascertain legislative intent. *Id.* Whether a statute is ambiguous is a question of law. *Awve v. Physicians Ins. Co.,* 181 Wis. 2d 815, 822, 512 N.W.2d 216, 218 (Ct. App. 1994).

¶ 10. There are two phrases in § 76.09, STATS., the meaning of which the parties dispute: "property subject to assessment . . . which has been omitted from assessment" and "by mistake or inadvertence."[5] We address only the second phrase, because the proper construction of this phrase is dispositive. For purposes of this decision, we assume without deciding that the 4-R reduction resulted in property subject to assessment being omitted from assessment.

¶ 11. The railroads contend the 4-R reduction was not the result of "inadvertence," because it was intentional, and it was not the result of a "mistake," because the meaning of "mistake" does not include a deliberate and strategic decision, such as that which DOR made when it agreed to the 4-R reduction. DOR

---

[5] DOR concedes that if it has the authority for the retroactive assessments, that authority is derived only from § 76.09, STATS.

implicitly concedes its agreement to the 4-R reduction was not inadvertent, but contends it was a "mistake," referring to the dictionary definition. Mistake is defined as an "error or a fault resulting from defective judgment, deficient knowledge, or carelessness," or a "misconception or misunderstanding." AMERICAN HERITAGE COLLEGE DICTIONARY 873 (3d ed. 1993).[6] According to DOR, the 4-R reduction was based on an error of law, or a misunderstanding of law. The error or misconception, as explained by DOR's counsel at oral argument, is that, until the Supreme Court's decision in *ACF Industries*, DOR understood the 4-R Act to require that the railroads not be taxed at 100% of their personal property when other industries were not. That understanding, DOR explains, was based on reported decisions in the federal circuit court of appeals, culminating in the Ninth Circuit's decision in *ACF Indus., Inc. v. Department of Revenue*, 961 F.2d 813 (9th Cir. 1992), *rev'd* 510 U.S. 332 (1994). However, DOT continues, its understanding proved to be a misunderstanding, in view of the Supreme Court's interpretation of the 4-R Act.

¶ 12.  We conclude the meaning of "mistake" in § 76.09, STATS., is ambiguous. We do not reach this conclusion because the parties disagree on its meaning, since that does not, in itself, make statutory language ambiguous. *See Setagord*, 211 Wis. 2d at 406, 565 N.W.2d at 510. Rather, we are of the view that reasonably well-informed persons could understand "mistake" both to encompass a deliberate and careful decision based on a view of the law that was later rejected by the

---

[6] In the absence of a statutory definition, we construe words according to their common and approved usage, which may be established by a dictionary. *Swatek v. County of Dane*, 192 Wis. 2d 47, 61, 531 N.W.2d 45, 50 (1995).

United States Supreme Court, and to exclude such a decision. We agree with DOR and the trial court that the deliberate and careful nature of DOR's decision does not, in itself, preclude it from coming within the definition of "mistake." Construing "mistake" as the railroads advocate would make its meaning indistinguishable from "inadvertence," and we are to assume the legislature intended each word to have a different meaning. *See Armes v. Kenosha County*, 81 Wis. 2d 309, 318, 260 N.W.2d 515, 519 (1977) (where legislature uses similar but different terms in a statute, particularly within same section, we presume it intended the terms to have different meanings).[7] On the other hand, given the common usage of "mistake" as established in the dictionary, a reasonable person could understand the word as excluding a decision made after research and study and supported by case law precedent at the time it was made. *See La Crosse Footwear, Inc. v. LIRC*, 147 Wis. 2d 419, 423, 434 N.W.2d 392, 394 (Ct. App. 1988) (§ 108.09(6)(c), Stats., authorizing LIRC to set aside decisions on the grounds of "mistake" is ambiguous, because mistake could mean only mistakes of fact or could include mistakes of law as well).

---

[7] Inadvertence is defined as "1. The quality of being inadvertent. 2. An instance of being inadvertent; an oversight or a slip." Inadvertent is defined as "1. Not duly attentive. 2. Marked by unintentional lack of care." American Heritage College Dictionary 685 (3d ed. 1993). We observe that one of the definitions of "mistake"—"an error or a fault resulting from . . . carelessness"—is synonymous with inadvertence, but "mistake" has other definitions that are not synonymous, and we must therefore assume the legislature intended the word "mistake" to mean something other than, or in addition to, "inadvertence."

¶ 13.   Having concluded the meaning of "by mistake" is ambiguous, we consider the subject matter, object, context and legislative history of the statute in order to resolve the ambiguity. We observe at the outset that any statute that addresses the assessment of taxes for prior years (when there is no fault on the part of the taxpayer) implicates two important, and competing, public policies: taxpayers should have some finality with respect to the taxes that are assessed against them, *see State ex rel. Fountain v. City of Green Bay*, 105 Wis. 2d 699, 703, 314 N.W.2d 904, 906 (1981); and the state should have the means of collecting taxes for which taxpayers are legally liable but which were not assessed, so that all taxpayers bear their fair share. *See State ex rel. Burnham v. Cornwall*, 97 Wis. 565, 569–70, 73 N.W. 63, 65 (1897). The legislature has balanced these competing policies in § 76.09, STATS., in one unambiguous way: by imposing a time limitation, so there is a point beyond which omitted property may not be retroactively assessed. But it has imposed another limitation based on the reasons for the omission. Because the legislature qualified the authority to assess omitted property to that omitted "by mistake or inadvertence," we must assume it intended that not all omissions of property subject to assessment within the prescribed time period come within the statute. Otherwise, this phrase has no function, a result we are to avoid. *See Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 250, 493 N.W.2d 68, 76 (1992).

¶ 14.   We agree with the railroads that, if we construe "mistake" as DOR urges, it is difficult to envision any omission of property that does *not* result from either mistake or inadvertence. Undoubtedly, DOR never intends to omit property from assessment that it

337

believes is subject to assessment. If DOR does omit property, it must be either because (1) DOR does not know of the property; (2) DOR knows of the property, believes it is subject to assessment, and intends to assess it but does not because of some clerical error, incorrect computation or similar oversight; or (3) DOR knows of the property and does not believe it is subject to assessment. The first situation comes within the definition of "mistake" (an error resulting from insufficient information). The second comes within the definition of "inadvertence." The third situation could arise from inadvertence, such as overlooking an applicable regulation, or from mistake, such as an error based on defective judgment or insufficient information. However, if a mistake in the third situation includes the circumstances of this case—entering into a settlement agreement after careful analysis of the applicable statutes and existing case law interpreting it, which case law that is later reversed by the Supreme Court—then the phrase "by mistake or inadvertence" does not add anything to the meaning of the sentence.

¶ 15.   The railroads support their argument that "mistake or inadvertence" must have a limiting function by contrasting § 76.09, STATS., with § 70.44, STATS., the "omitted property" statute for taxation of general property,[8] and its legislative history.[9] Section 70.44 is similar to § 76.09, but does not now contain the phrase "mistake or inadvertence":

---

[8] Section 70.44, STATS., relates to the taxation of general property, which does not include property taxed under ch. 76, STATS. See § 70.02, STATS.

[9] At oral argument the parties informed us that they found no legislative history of § 76.09, STATS., that is of assistance, and our own research has uncovered none other than that which we relate above.

> **Assessment; property omitted**. (1) Real or personal property omitted from assessment in any of the 2 next previous years, unless previously reassessed for the same year or years, shall be entered once additionally for each previous year of such omission, designating each such additional entry as omitted for the year [. . . .] of omission and affixing a just valuation to each entry for a former year as the same should then have been assessed according to the assessor's best judgment. . . .

Section 70.44. However, when enacted as § 1059, STATS., 1878, this provision did contain the phrase "by mistake or inadvertence."[10] At that time, and until 1903, railroads paid a license fee in lieu of other taxes, so this omitted property provision did not apply to railroads. *See* §§ 1211–1213, STATS., 1878. After the method of taxing railroads was changed in 1903 to an ad valorem method, and the responsibility for this was placed with a newly created state tax commission, *see* Laws of 1903, ch. 315; ch. 51, STATS., 1899–06, the legislature added an omitted property provision substantially the same as § 1059, 1878, *see* Laws of 1905, ch. 28, which was the predecessor to § 76.09, STATS.[11]

¶ 16. The removal of the "mistake and inadvertence" language from § 1059, STATS., in 1909 was occasioned by the supreme court's limiting interpretation of that language in *Ashland County v. Knight*, 129 Wis. 63, 65, 108 N.W. 208, 209 (1906). *See Central*

---

[10] Section 1059, STATS., 1878, applied only to real property, but personal property was added by Laws of 1899, ch. 50.

[11] The omitted property provision for railroads and other utilities was originally codified in § 1087—44 (ch. 48c), STATS., 1899–06; renumbered to § 73.05(1), STATS., 1921; renumbered to § 76.47, STATS., 1931, and renumbered to § 76.09, STATS., by Laws of 1963, ch. 255.

*Cheese Co. v. City of Marshfield*, 13 Wis. 2d 524, 534, 109 N.W.2d 75, 81 (1961). In *Ashland*, the court concluded that statute did not confer the authority to reassess in a subsequent year property which was assessed and entered upon the tax roll for the year in which it should have been taxed, when the prior assessment has been set aside or determined to be illegal or void. *Ashland*, 129 Wis. at 65, 108 N.W. at 209. The court reasoned that the authority to reassess under this section was given only when property was omitted by "mistake or inadvertence" and that did not include the present situation, because another section, § 1087 (ch. 48), STATS., 1898, (now § 70.74, STATS.) expressly provided for reassessment of real property, but not personal property, when an assessment was declared void or illegal. *Id.* Three years after *Ashland* was decided, the legislature removed the phrase by "mistake or inadvertence" from § 1059,[12] and the court in *Central Cheese* interpreted the timing of this deletion to mean that the legislature thereby intended to authorize a reassessment of property, personal and real, the original assessment of which had been declared void or illegal or set aside. *Central Cheese*, 13 Wis. 2d at 534, 109 N.W.2d at 81. However, the legislature at that time did not delete the phrase from the predecessor to § 76.09, STATS., *see* § 1087—44 (ch. 48c), STATS., 1911, and it has not done so since.

¶ 17.   Because the specific reason for the deletion of the phrase from the predecessor to § 70.44, STATS., is not applicable to § 76.09, STATS., (that is, there is no comparable limitation to real property in § 76.15, STATS., the reassessment provision in ch. 76) and because we are not concerned here with an assessment

---

[12] Laws of 1909, ch. 490.

that has been declared void, illegal or set aside, the deletion of "mistake or inadvertence" from the predecessor to § 70.44 does not aid us in defining "mistake" in the context of this case. The most this legislative history does is support the principle of statutory construction, which we have already identified, that we are to presume the legislature intended each of the words, "mistake" and "inadvertence," to add something to the sentence, thus limiting in some way the causes for the omission of the property.

¶ 18.    The railroads also argue that any ambiguity in a statute imposing a tax must be construed in favor of the taxpayer, and they cite *State ex rel. Fountain v. City of Green Bay*, 105 Wis. 2d 699, 702, 314 N.W.2d 904, 905 (Ct. App. 1981), as a case in which we applied this principle to a statute permitting corrections to assessors' errors—§ 70.43, STATS., 1979–80.[13] DOR correctly points out that because we decided in *Fountain* that § 70.43, 1979–80, was not ambiguous, we did not, in the end, employ this principle to interpret the statute: we concluded § 70.43, 1979–80, plainly did not allow the collection of undervalued assessments for preceding years, but only a correction that would be taken as the true valuation for the next

---

[13] At the time *Fountain* was decided, § 70.43, STATS., 1979–80, provided:

> **Correction of errors by assessors.** If any assessor shall discover that any error was made in any assessment roll during the preceding year, by which the valuation of any real or personal estate subject to taxation was increased or reduced from the true assessed valuation thereof, he shall correct such error by adding to or subtracting from, as the case may be, the valuation of such property on his assessment roll as fixed by him, the amount omitted from or added to the true assessed valuation in consequence of such error and make a marginal note of such correction, and the result shall be taken as the true valuation of such property for the latter year and a final correction of such error.

year. *Fountain*, 105 Wis. 2d at 702–03, 314 N.W.2d at 906. Nevertheless, d*Fountain* indicates that the principle that ambiguities are resolved in the taxpayer's favor applies to statutes that seek to retroactively assess and tax property, as well as to statutes defining what is taxable in the first instance. *See id.* at 702, 314 N.W.2d at 905.

¶ 19. In responding to the railroad's arguments, DOR relies on the language of statutes other than § 76.09, STATS., and on cases applying those other statutes, to argue that the legislature intended all taxable property to be assessed and taxed. First, DOR argues, since the legislature expressed a very clear intent in § 76.15, STATS., to permit DOR to reassess property as many times as necessary until it is lawfully taxed, the legislature must have intended to permit the taxation of the property excluded from assessment by the 4-R reduction, now that it is established that the property is subject to taxation. Section 76.15(1) obligates DOR to reassess property when "any tax levied . . . shall be adjudged illegal and nonenforceable, or shall be set aside by any court of the state of competent jurisdiction," and subsec. (2) permits the department's authority to be "exercised under sub. (1) as often as may be necessary until the amount of taxes legally due from any such company for any year under ss. 76.01 to 76.26 has been finally and definitely determined." Rather than support DOR's position, § 76.15 demonstrates that when the legislature intends to give DOR broad authority it does so by allowing reassessment without regard to the reasons a tax is adjudged illegal and nonenforceable or set aside (and in putting no time limitation on the reassessment). The legislature's use of language in § 76.09, limiting the cause of omission of property (and the time period), indicates the legisla-

ture did not intend DOR to have such broad authority with respect to omitted property.

¶ 20.    DOR also refers us to several cases which, it contends, are factually similar to this case and in which retroactive assessment of property was allowed. However, none of these cases concerned § 76.09, STATS., but, rather, statutes that did not contain the "by mistake or inadvertence" language. In *State ex rel. M.A. Hanna Dock Co. v. Willcuts*, 143 Wis. 449, 128 N.W. 97 (1910), a certain portion of a mass of coal located on the coal company's docks had been omitted in assessing local property taxes against the company because a circuit court had determined the coal was exempt from local taxation. That court had decided that, as a result of a transaction between the company and a railroad, the railroad now owned the coal and used it in its operations. *Id.* at 449, 128 N.W. at 98. As a result of that decision, the assessor assessed to the coal company in 1908 only that portion of the coal that was not owned by the railroad. When an appellate court reversed, concluding that the coal company was the owner of the disputed coal, the assessor sought to add to the 1909 assessment the value of the coal that had been omitted from assessment the previous year under the predecessor to § 70.44, STATS., § 1059, STATS., 1898, as amended by Laws of 1909, ch. 490.[14]

¶ 21.    The court in *Hanna Dock* concluded that assessment of the omitted coal in 1909 was proper, rejecting the coal company's argument that the assessor was incompetent to present evidence showing

---

[14] Because the omitted property in *State ex rel. M.A. Hanna Dock Co. v. Willcuts*, 143 Wis. 449, 128 N.W. 97 (1910), was determined to be that of the coal company, not that of the railroad, the predecessor to § 70.44, STATS., not the predecessor to § 76.09, STATS., applied.

how he arrived at the 1909 assessment because doing so impeached the 1908 assessment. *Hanna Dock*, 143 Wis. at 452, 128 N.W. at 99. The court distinguished between the situation at hand, "an actual omission to assess the greater part of the coal upon the mistaken notion that it was not subject to local taxation," and a situation in which the assessor had determined the assessable value of a specified amount of coal, and then sought the next year to add to the assessed value of that same coal because the prior assessment was too low. *Id.* However, the court had no occasion to discuss the legislature's intended meaning of "mistake," because the applicable statute did not contain the language "by mistake or inadvertence."

¶ 22. The same is true of *Armory Realty Co. v. Olsen*, 210 Wis. 281, 246 N.W. 513 (1933), which again concerned § 70.44, STATS. The court there determined that the assessor for the village could retroactively assess certain real property which had not been assessed due to the assessor's belief it was owned by the State of Wisconsin and was therefore exempt. *Armory Realty*, 210 Wis. at 293–94, 246 N.W. at 517–18. The issue before the court was whether the entry on the assessment rolls with "exempt" written next to it precluded application of § 70.44, and the court held it did not. *See id.*

¶ 23. *Laabs v. Wisconsin Tax Comm'n*, 218 Wis. 414, 261 N.W. 404 (1935), the third case on which DOR relies, concerns the retroactive collection of income taxes under § 71.11, STATS., 1927 (the predecessor to § 71.74(2), STATS.), which authorized the tax commission or assessor to conduct an investigation of any returns and to assess additional income taxes within certain prescribed time periods. The taxpayer's patent royalty income had not been taxed for three years

based on a United States Supreme Court decision which held such income was not subject to taxation by the states. When the Supreme Court overruled that decision, the commission sought to collect taxes on that income for several years prior to the overruling decision. The Wisconsin Supreme Court held that the overruling decision operated retrospectively to make the income taxable, and § 71.11, 1927, did not impose a requirement that the retroactive assessment be based upon information and new facts; therefore, the corrected assessment could take place any time within the time limits of the statute. *Laabs*, 218 Wis. at 422–23, 261 N.W. at 407–08.

¶ 24.   While the reason for the failure to assess in *Laabs* is strikingly similar to this case—reliance on a court decision that was later overruled (*Laabs*) or reversed (this case)—the fact that § 71.11, STATS., 1927, contained no language comparable to "by mistake or inadvertence" limits its applicability to this case. The *Laabs* court does characterize the failure to assess there, as "based [on] . . . an erroneous view of the law," *Laabs*, 218 Wis. at 423, 261 N.W. at 408, which appears at first glance to support DOR's argument that its agreement to the 4-R reduction was a "mistake." However, the court did not have to grapple with the question presented by this case: if DOR's agreement to the 4-R reduction was a mistake, what omission of property is not "by mistake or inadvertence"?[15]

---

[15] The exact language of the court in *Laabs v. Wisconsin Tax Comm'n*, 218 Wis. 414, 261 N.W. 404 (1935), is: "The original failure to assess was based solely upon an erroneous view of the law, and a corrected assessment may be made within the time limited by the statutes. *Chicago & N.W. R. Co. v. Tax Comm.*, 199 Wis. 368, 226 N.W. 293 [(1929)]; *Armory Realty Co. v. Olsen*, 210 Wis. 281, 246 N.W. 513 [(1933)]." *Chicago* did not involve

¶ 25. We agree with DOR that it is for the legislature to balance the competing policies at stake in retroactive assessments, and we agree that it could choose to allow all property omitted from assessment to be assessed within a prescribed time period without any limitation on the cause. However, we are persuaded the legislature has not done so in § 76.09, STATS. Instead, it has chosen to limit the cause of omissions to "mistake and inadvertence." DOR acknowledged at oral argument that its definition of mistake depends upon viewing the law only as that which is finally declared by the highest court, rather than that which case law precedent establishes at any given time. Therefore, according to DOR, no matter how correct a particular legal position appears to be at the time in light of existing precedent, and no matter how carefully it is arrived at, it later becomes a mistake if that precedent is overruled or reversed. There is support in the case law discussing retroactive application of court decisions for this view of what "the law" is, *see Laabs*, 218 Wis. at 423, 261 N.W. at 408. However, we conclude that the more reasonable interpretation of "mistake" in § 76.09 is that it does not include a careful and thorough decision consistent with existing precedent, such as the decision that was the basis for DOR's agreement to the 4-R reduction.

¶ 26. We reach this conclusion for several reasons. First, excluding this type of decision from the

omitted property under the predecessor to § 76.09, STATS., but, rather, income taxes that were due but had not been paid by the railroad under ch. 71, STATS., 1925, and there was no language comparable to "mistake or inadvertence" limiting the retroactive assessment of this income. *See* § 71.155, STATS., 1925. As we have explained above, *Armory* involved the predecessor to § 70.44, STATS., which did not contain this phrase.

definition of "mistake" means that the term does have a function in the sentence. The legislature could reasonably have intended that when disputes about the legality of taxing certain property arises, DOR should either seek a final resolution from the court of highest authority, or enter into an agreement with the taxpayer that is a final resolution of the dispute. Second, the legislature has had no trouble in choosing words that give DOR, or assessors, broader authority to retroactively assess, or reassess, property. Third, although we have concluded that DOR's definition of "mistake" is a reasonable one, it does push up against the boundaries of the common meaning of that term.

¶ 27. Finally, following our decision in *Fountain*, 105 Wis. 2d at 702, 314 N.W.2d at 905, we conclude that the reason for interpreting a tax imposition statute in favor of the taxpayer is applicable in interpreting § 76.09, STATS. The rationale for the principle described as "universal" in *Wadhams Oil Co. v. State*, 210 Wis. 448, 459–60, 246 N.W. 687, 688 (1933), is that the authority to levy taxes is an "extraordinary" one, and should not be left to implication, *see City of Plymouth v. Elsner*, 28 Wis. 2d 102, 106, 135 N.W.2d 799, 802 (1965) (citation omitted). Fairness dictates that the laws requiring citizens to bear the burden of taxes have only the effect which the legislature clearly intended. *Dean v. Charlton*, 27 Wis. 522, 526 (1871). Similarly, when the legislature permits retroactive assessments of property in situations where the taxpayer has fully disclosed all property, but DOR decided that it could not legally tax some of the property, the legislature should do so expressly, in order that the taxpayer knows that, despite DOR's decision, DOR could later assess the omitted property within the prescribed time

period, if case law precedent changed. Arguably, it is even more important that the legislature be clear in such a situation, because taxpayers otherwise have no reason to believe they may later be taxed on property that DOR agreed in writing was not taxable.

¶ 28.  In summary, we conclude DOR's agreement and implementation of the 4-R reduction was due neither to mistake nor inadvertence within the meaning of § 76.09, STATS. Therefore, DOR does not have the authority under that statute to retroactively assess the property omitted from assessment due to the 4-R reduction.

*By the Court.*—Judgment reversed.