STATE of Wisconsin, Plaintiff-Respondent,

v.

Paul VENEMA, Defendant-Appellant.

Court of Appeals

*No. 01–2502–CR. Oral argument June 13, 2002.—Decided
July 31, 2002.*

2002 WI App 202

(Also reported in 650 N.W.2d 898.)

On behalf of the defendant-appellant, there was oral argument and briefs submitted by *Randall R. Garczynski* of *Garczynski & Brennan Law Offices, S.C.* of Elkhorn.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Edwin J. Hughes*, assistant attorney general. There was oral argument by *Edwin J. Hughes*.

Before Brown, Anderson and Snyder, JJ.

¶ 1. BROWN, J. Paul Venema was convicted of having a private interest in a public contract contrary to WIS. STAT. § 946.13(1)(a) (1999–2000).[1] On appeal, Venema argues that he could not have violated the statute as a matter of law because he left office before the contract was executed. Therefore, according to Venema, he never improperly wore "two hats." We reject this argument because it relies on a very narrow construction of the statute which we find unacceptable. Venema also argues that the trial court erred by denying his motion in limine to keep out evidence relating to his conduct at town board meetings prior to January 1999. Correlatively, Venema contends that he was prejudiced by the State's closing argument in which it relied on that evidence to assert that he had negotiated the contract in his private capacity when he advocated

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

positions as a town board supervisor before he submitted an application for the contract. We agree that the use of the pre-January 1999 evidence to establish the elements of the offense was improper and we remand for a new trial.

¶ 2. Venema's conviction stems from his conduct as a town board supervisor for the town of Delavan, a position he held from April 4, 1997 to April 13, 1999. Among the town board responsibilities is management of the town park. The town operates Community Park, which includes a boat launch and a community center and charges fees for access to park facilities. In 1998, the town entered into a contract with a third-party contractor, Conservation, Inc., to manage and maintain Community Park. The duties of Conservation, Inc. included maintaining the grounds and buildings, supervising park activities and collecting gate fees and boat launch fees. The contract covered the 1998 summer season and provided a rate of compensation of 35% of gate receipts.

¶ 3. In late July 1998, Conservation, Inc. walked off the job leaving the town with no park manager. Venema, as chairperson of the Park Committee, took over management of the park for the remainder of the season with the aid of other board members at no charge.

¶ 4. The 1999 contract was then discussed by the town board at meetings in September, October and November 1998. As we will detail later in this opinion, Venema participated in these meetings during which the board discussed the terms of the contract for the 1999 summer season.

¶ 5. In January 1999, the town took out an advertisement soliciting proposals from those interested in the 1999 park manager contract. The Park Committee

received letters of interest from three persons, including Venema, who still served as chairperson of that committee. On February 25, 1999, the Park Committee interviewed Venema and one other applicant for the position of park manager. Following the interviews and discussion, the members of the committee voted in favor of Venema's proposal, which they recommended that the town board accept. Venema did not participate in the vote.

¶ 6. At a meeting on March 4, 1999, the town board approved a motion to hire Venema as the independent contractor for Community Park. The motion called for the board to work out a contract with Venema. Venema, who was present at the meeting, did not participate in any discussion and did not vote on the motion.

¶ 7. Venema left office on April 13, 1999. On April 16, he was presented with a contract for the park manager position for the 1999 season, which he signed. The contract was formally approved by the town board at a meeting on April 20, and after an addendum was added, the contract became effective on April 21. Venema received $21,333 as park manager for the 1999 summer season.

¶ 8. In January 2001, Venema was charged with having a private interest in a public contract "on or about and between April 2, 1998 and April 16, 1999" in violation of Wis. Stat. § 946.13(1)(a) and (b).[2] Venema

---

[2] Wisconsin Stat. § 946.13(1)(a) and (b) provides:

(1) Any public officer or public employee who does any of the following is guilty of a Class E felony:

(a) In the officer's or employee's private capacity, negotiates or bids for or enters into a contract in which the officer or employee has a private pecuniary interest, direct or indirect, if at the same

filed a motion in limine seeking to keep out all evidence predating the advertisement posted by the town board in January 1999. In particular, Venema sought to exclude the fact that he had also submitted an application for the 1998 park contract but withdrew it before the Park Committee acted upon the applications. He also sought to exclude evidence of positions he asserted as town board supervisor in the fall of 1998 regarding the 1999 park contract he was later awarded.

¶ 9. At the motion hearing, Venema pointed out that the purpose of the statute was to prevent a public officer from wearing "two hats," and in this case, until notice of the position was posted and Venema had submitted a letter of interest, it was impossible for him to wear "two hats." In other words, Venema argued that he could not have had a private, pecuniary interest in 1998 because the 1999 position had not yet been posted and he had not applied for it. According to Venema, the only time period relevant under the statute is from January 1999 to April 1999, from when he submitted his letter of interest to when he left office. Therefore, any evidence relating to his conduct while a supervisor in 1998 was irrelevant and prejudicial.

¶ 10. The State responded that at the 1998 town board meetings Venema actively facilitated formulation

---

time the officer or employee is authorized or required by law to participate in the officer's or employee's capacity as such officer or employee in the making of that contract or to perform in regard to that contract some official function requiring the exercise of discretion on the officer's or employee's part; or

(b) In the officer's or employee's capacity as such officer or employee, participates in the making of a contract in which the officer or employee has a private pecuniary interest, direct or indirect, or performs in regard to that contract some function requiring the exercise of discretion on the officer's or employee's part.

of what would become the 1999 contract which he eventually received. Stated differently, the State argued the evidence was relevant because it concerned Venema's actions as a public officer during 1998 in reference to the 1999 contract. The State's theory was that Venema's earlier conduct was "part and parcel of the crime. The crime is participating, is negotiating, bidding or entering into a contract where you have a private pecuniary interest." The State further opined that "it's highly relevant for the state to be able to show his history with the park contract and his participation in fashioning the park contract, the very park contract that he ultimately applied for[,] bids for and subsequently was awarded." The court ruled largely in favor of the State, holding that the only evidence not allowed in was Venema's earlier bid for the 1998 summer season contract and withdrawal of the bid.

¶ 11. The case proceeded to a jury trial on July 23, 2001. After the close of testimony, the court granted Venema's motion for a directed verdict on the WIS. STAT. § 946.13(1)(b) charge, reasoning that Venema had avoided liability under that statute by abstaining from voting on the contract.[3] The jury returned a verdict on the remaining charge, finding Venema guilty of violating § 946.13(1)(a).

---

[3] In distinguishing the statutory elements required under paragraphs (a) and (b) of WIS. STAT. § 946.13(1), the trial court relied on attorney general opinions discussing the extent of the statute's application. One point emphasized by several opinions is that board members may avoid liability under paragraph (b) by abstaining from voting on matters relating to their private contracts. See, e.g., 76 Op. Att'y Gen. 90, 92 (1987). The opinions also advise that abstaining from voting does not avoid a violation of paragraph (a). See 76 Op. Att'y Gen. at 93.

██

¶ 12. Venema presents two basic arguments in support of his challenge to his conviction. First, he argues that he could not have violated Wis. Stat. § 946.13(1)(a) as a matter of law because he left office before the contract was formally executed. According to Venema, "[s]ince the contract was not created until April 20, 1999, any discretionary acts necessary to accrue criminal liability under the strict liability statute had to occur after that date." We understand Venema to challenge the trial court's interpretation and application of the statute to a set of facts, which presents a question of law that we review de novo. *State v. Setagord*, 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997).

### Requisites of Wis. Stat. § 946.13(1)(a)

██

¶ 13. Wisconsin Stat. § 946.13(1)(a) prohibits a public officer from negotiating, bidding for, or entering into a contract in which he or she has a private pecuniary interest if, at the same time, he or she has a role to play in an official capacity in the making of that contract. As the supreme court explained in *State v. Stoehr*, 134 Wis. 2d 66, 79–80, 396 N.W.2d 177 (1986), the statute imposes strict liability as a means to enforce a prescribed standard of conduct:

> Section 946.13 is directed not at corruption but at conduct presenting an opportunity for corruption. Because a public officer's judgment may be impaired when the officer transacts government business in which he or she has a personal economic interest, the statute attempts to prevent public officers from succumbing to temptation by making it illegal for them to enter into

relationships which are fraught with the danger that they will advance a private interest rather than a public good. (Citation omitted.)

¶ 14. The *Stoehr* court further observed that WIS. STAT. § 946.13 is based on the common law rules that an agent may not serve two masters and that an agent may not engage in self-dealing. *Stoehr*, 134 Wis. 2d at 80. The court quoted the following language from the Judiciary Committee Report:

> The object of [sec. 946.13] is to prevent a public officer or employe from having private pecuniary interests which may influence him to exercise discretionary powers in his official capacity in a manner inconsistent with the interests of the public. It is derived from that rule of agency which prohibits an agent from serving two masters with opposing interests in the same transaction and the common-law rule which prohibits public officers from simultaneously holding incompatible offices.

*Id.*[4]

¶ 15. The parties agree that the statute incorporates four elements for the offense of holding a private interest in a public contract, namely, (1) the defendant was a public officer; (2) the defendant negotiated (or bid for or entered into) a contract in a private capacity; (3) the defendant had a private pecuniary interest in the contract; and (4) at the same time, the defendant was authorized in his or her official capacity to participate

---

[4] Specifically, the court in *State v. Stoehr*, 134 Wis. 2d 66, 79–82, 396 N.W.2d 177 (1986), held that WIS. STAT. § 946.13(1)(b) is a strict liability offense, but its discussion of the legislative history and intent is equally applicable to paragraph (a). *See* WIS JI—CRIMINAL 1740 (comment). Indeed, the parties in this case do not dispute that paragraph (a) is a strict liability statute.

in the making of the contract or to exercise discretion over the contract. *See* WIS JI—CRIMINAL 1740.

¶ 16. According to Venema's interpretation of the statute, he escapes liability because the contract was formed and executed after his term of office as supervisor. He acknowledges the statutory goal that a public officer must avoid self-dealing, but claims he never improperly wore two hats because the contract never came before him while he was a public officer. According to Venema, because the contract did not exist during his tenure, he could not have had a pecuniary interest in it nor could he have had any discretionary authority over it while a public officer. Furthermore, he argues that because the contract was presented to him on a "take it or leave it" basis, he never negotiated the contract in his private capacity.

¶ 17. We agree with Venema that the timing of these elements is critical to a lawful conviction under the statute. We also keep in mind that the statute is not directed at corruption per se, but at conduct raising an opportunity where corruption can occur. *See Stoehr*, 134 Wis. 2d at 79. We will address each element of the offense separately.

### 1. Public Official

¶ 18. The parties do not dispute that Venema was a public officer from the date of his election on April 4, 1997, until the date he officially left office on April 13, 1999.

## 2. Negotiate, Bid or Enter into a Contract in his Private Capacity

¶ 19. Venema sent a letter of interest concerning the park manager position on or about January 23, 1999, while he was still a supervisor. He was presented the contract on April 16, 1999, after he left office, and it was approved on April 20, 1999. According to Venema, he could not have "negotiated" in his "private capacity" until after the board selected him for the position and offered him the contract "over which to discuss terms and conditions." Moreover, in this particular case, Venema asserts that no negotiation ever took place, even after he received the contract, because it was offered to him on a take it or leave it basis.

¶ 20. We reject Venema's argument that a contract has to be in existence in order for a violation to occur under WIS. STAT. § 946.13(1)(a). Such an interpretation is undermined by the plain meaning of the statutory language. The common meaning of "negotiate" is to "communicate with another party for the purpose of reaching an understanding[.]" BLACK'S LAW DICTIONARY 1059 (7th ed. 1999).[5] Consequently, negotiation ordinarily precedes the formation of a contract and it is these precontractual bargaining relationships that raise the specter of self-interest if one of the parties is also a public official. By contrast, the practical effect of

---

[5] In the absence of a statutory definition, we construe words according to their common and approved usage, which may be established by a dictionary. *Wis. Cent. Ltd. v. DOR*, 2000 WI App 14, ¶ 11 n.6, 232 Wis. 2d 323, 606 N.W.2d 226, *review granted*, 2000 WI 36, 234 Wis. 2d 175, 612 N.W.2d 732 (Wis. Mar. 20, 2000) (No. 99–0194).

Venema's technical construction is to read the words "negotiate, bid or enter" completely out of the statute or render them surplusage. This we cannot allow. *See Donaldson v. State*, 93 Wis. 2d 306, 315, 286 N.W.2d 817 (1980).

¶ 21. In addition, testimony in the record belies Venema's assertion that no negotiation of contract terms ever took place. Supervisor Dale Bernsteen, who was responsible for drafting the 1999 park contract, testified that after Venema had been selected for the park manager position and before he resigned, Venema asked him to increase the compensation to 50% of park receipts. Bernsteen rejected the request. A jury could have reasonably concluded that this unrefuted testimony describing a discussion about compensation under the contract is "negotiation."

¶ 22. A jury might also have reasonably concluded that Venema's interview for the position with Park Committee members constituted "negotiation." A person who interviews for a job necessarily advances a private interest. In this case, Venema was interviewed by a committee of which he was the chairperson. At the time of this interview, he was a public officer with an inside track on what the job entailed and how much had been budgeted for it. He also had authority to approve the application for the contract that he sought to win. Under these facts, a trier of fact might conclude that Venema was advancing a private interest while acting as a public officer, which is exactly the type of conduct that the statute seeks to redress.

### 3. Private Pecuniary Interest

██

¶ 23. Wisconsin JI—Criminal 1740 n.6 indicates that "pecuniary" has not been defined in Wisconsin case

law. Venema relies on *State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 515, 261 N.W.2d 434 (1978), which stated that to disqualify an adjudicator a pecuniary interest must be "a direct, certain and immediate interest, and not one that is indirect, contingent, incidental or remote." (Citation omitted.) We think it is plain that once Venema submitted his letter of interest on or about January 23, 1999, he had a direct, certain and immediate interest in the contract. He concedes as much in his brief. Although he had not yet been selected by the Park Committee and approved by the town board, a jury could reasonably conclude that he was serving two masters with opposing interests by advocating for his selection while serving as supervisor.

### 4. At the Same Time, Authorized or Required by Law to Perform a Discretionary Act Concerning the Contract

¶ 24. This fourth element requires the prior three elements to occur at the same time the public officer is authorized to exercise discretion regarding the contract. Again, we reject Venema's overly narrow construction of the statute that he was not authorized to act regarding the contract because it was not executed during his official tenure. Instead, his conviction under the statute could have been established by the following activities he performed in his private capacity while serving as supervisor: Venema submitted an application for the 1999 park contract, appeared before his own Park Committee to answer questions and advocate for his selection, discussed his interest in the contract with other supervisors, and sought to win a higher percentage of the park receipts in compensation. If the jury had convicted Venema based solely upon this

evidence, which concerned his activities after he submitted his letter of interest and prior to his resignation, we would have no trouble affirming the verdict in this case.

## Whether there was Harmless Error

¶ 25. Venema contends that evidence concerning his conduct in the fall of 1998 was improperly admitted to establish his liability under Wis. Stat. § 946.13(1)(a). This is substantially the same evidentiary argument he raised and lost in his motion in limine.[6] We must first determine whether admission of the evidence was erroneous and, if it was, whether the error was harmless.

██

¶ 26. The evidence at issue concerned positions that Venema asserted during town board meetings in the fall of 1998. In September, the town board discussed the 1999 contract. Venema made a successful motion at this meeting that the duties continue to be performed by an independent contractor. Venema also suggested increasing the gate receipts to 40%. The board ultimately approved a figure of 35%. In October, Venema chaired a town board work meeting during which a draft of the 1999 park contract was presented and discussed. Venema voted to present the budget to the town board at the next meeting. In November, the town

---

[6] During oral argument, the State pointed out that Venema did not object to the portions of the State's closing argument that he now challenges, suggesting that he has waived the right to appeal this issue. However, the controversial portion of the closing argument concerns evidence that was the subject of Venema's motion in limine. The definitive pretrial ruling on the motion served to preserve Venema's position for appeal. *See State v. Bergeron*, 162 Wis. 2d 521, 528, 470 N.W.2d 322 (Ct. App. 1991).

board approved the 1999 budget, which included provision for the 1999 park manager's contract. Venema was present but abstained from the vote on the budget.

¶ 27. The State at the hearing on the motion in limine set forth its theory of the case and how it would satisfy the elements of the offense under Wis. Stat. § 946.13(1):

> [Venema's] Counsel doesn't get to just pick out of there which facts he doesn't want me to put into evidence when they are directly related to the crime and they've gone directly to the elements of the crime. What I intend to show is that [between] . . . April 2 of 98 and April 16 of 99, there is various participation by Mr. Venema as a public officer in this contract process.
>
> . . . .
>
> [T]hroughout the year of 98 as the supervisor, Mr. Venema is doing things to facilitate that park contract, which he's ultimately getting in 99 . . . . [L]ooking at the history of events; we have Mr. Venema making application in April of '98; we have April 29 of 1998, where he is acting as the chairperson of the Park and Tourism committee; we have an event April 29 of '98, where he is participating in discussions on the appointment of the Park Gate and Boat Launch Manager position . . . . We have May 19 where Mr. Venema is reporting on who actually was hired that year to run the park, clearly knowledgeable of the contract and the dollar amount. We need to keep in mind that I have to show that this was for a contract of more than $15,000, and part of Mr. Venema's knowledge of that is in April of '98 until he's awarded the contract in '99, and he's acting as the Park Committee Chairperson. We have in August of '98 again discussion regarding request by the park contractor to be released from his contract, and discussions that the person that violated this contract, Mr. Venema, stating that the immediate issue is what

are we going to do with the park for the remainder of the year. That's, well he's actively campaigning to the other board members to get this contract, which he does ultimately get . . . . These facts go directly to the elements. It's a direct proof of him as a public officer or employee, and it's direct proof that he is authorized or required by law to participate in the making of the contract in his capacity as a public officer or employee.

¶ 28. The court ruled that there should be no reference to the 1998 contract or Venema's participation in submitting an application or withdrawing it, unless the State brought and prevailed upon a motion for admission of other acts evidence. The court did not exclude any other pre-January 1999 evidence concerning Venema's actions on the town board.

¶ 29. To the extent that the court's ruling reflected its acceptance of the prosecutor's theory that the pre-January 1999 evidence was admissible to meet the elements of the offense, the ruling was in error. As a practical matter, Venema could not have had a pecuniary interest in or negotiated in his private capacity for a position that had not yet been posted. He did not serve two masters with opposing interests prior to his submission of his letter of interest. Simply put, none of the requisite elements under the statute had converged in the fall of 1998.

¶ 30. However, the State opined at oral argument that this evidence was otherwise admissible on the basis that it was helpful to the jury to provide background and context for the charges against Venema. Furthermore, in its brief the State claims that "Venema's conviction in no way turned upon the supposition that his guilt was established by activities that he took as a Town Supervisor before he submitted his application for the 1999 contract."

507

¶ 31. Our careful review of the record, however, reveals that the State, in introducing the evidence of Venema's activities prior to 1999, sought a much broader purpose than just to provide background and context. As we already recounted, the State made clear during the pretrial hearing that its intent was to use this evidence to establish the actual elements of the offense, not to merely provide background. Moreover, our reading of the record shows that the jury was improperly invited to rely on the pre-January 1999 evidence to convict Venema under the statute.

¶ 32. For example, during closing argument the prosecutor reminded the jury that at the town board meeting in September 1998, Venema moved to include the park contract in the budget and then advocated to increase the salary from 35% to 40%. The prosecutor then made the following comments: "The defendant clearly, as he had from April of '98 forward, always had the private interest to get that contract, to get that job, and to keep that job. It was his plan; that was his motive. He wanted the job; he wanted to earn the money." She continued in this vein by arguing, "ladies and gentlemen, it's that sort of corruption that this statute is designed to prevent against . . . . Clearly, beyond any reasonable doubt, beyond any doubt at all, he was acting in his private pecuniary interest. He was trying to line his own pocket a little bit more by arguing for a higher salary . . . [a]nd trying to negotiate better terms for himself." In other words, the prosecutor was not simply drawing an inference of self-dealing but she argued improperly that by his actions in September 1998 Venema had satisfied the following elements for the offense of having a private interest in a public contract: "[H]e's a Town Official. He was authorized

by law to act. He had a private interest in this contract. And he was certainly trying to negotiate better terms for himself."

¶ 33. The prosecutor then referred to town board meetings in October and November which Venema attended and participated in. She stated, "[e]very time that park contract issue is brought up, he's at one of those meetings." According to the prosecutor, the meetings established the fourth element, which "does not require that he actually do something. It only requires that he is authorized by law to do it . . . . He clearly did what he was legally authorized to do." Finally, the prosecutor summarized her theory of the case with these last comments to the jury: "Mr. Venema crossed the line. Everything he did from 1998 into 1999 was designed, was planned, was part of his motivation to serve his own self interest, his private, financial pecuniary interest."

¶ 34. In sum, we determine that there was sufficient evidence pertaining to the relevant time period from January to April 1999 from which the jury could reasonably conclude that Venema "crossed the line" in violation of the statute. However, we have no way of knowing if the jury relied on that properly admitted and relevant evidence in arriving at its verdict. We do know that the prosecutor did not limit her discussion of the evidence establishing his guilt to that time frame. Instead, she clearly and vehemently urged the jury to rely on evidence prior to January 1999 to find Venema guilty of the offense. The admission and use of such evidence in that manner was not harmless error. We therefore reverse the judgment of conviction and remand the case for a new trial.

*By the Court.*—Judgment reversed and cause remanded with directions.